**Steven R. ALTEN, Plaintiff,**

v.

**ELLIN & TUCKER, CHARTERED and Joel Kaye, Defendants.**

**Civ. A. No. 92–516–JLL.**

United States District Court, D. Delaware.

June 6, 1994.

---

Gerald P. Egan, Dion G. Rassias, and Mark J. Schwemler of Elliott, Reihner, Siedzikowski, North & Egan, Blue Bell, PA, for plaintiff.

Paul Cottrell of Tighe, Cottrell & Logan, Wilmington, DE, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Defendants, Ellin & Tucker, Chartered ("Ellin & Tucker") and Joel Kaye ("Kaye"), have moved for summary judgment, (Docket Item ["D.I."] 37), against plaintiff Steven R. Alten ("Alten"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff filed this suit to recover over $140,000.00 of tax penalties imposed upon him personally by the Internal Revenue Service, pursuant to 26 U.S.C. § 6672(a), as a "responsible person" who "willfully" failed to pay federal employee withholding taxes. Plaintiff alleges that this imposition of taxes resulted directly from the defendants' breach of contract for accounting services, accountant malpractice, and breach of fiduciary duty.

Defendants move for summary judgment on the theories that: (1) plaintiff is collaterally estopped from bringing this action in light of the IRS proceedings; (2) plaintiff's action is essentially a claim for indemnity and such a claim is against public policy and prohibited by case law; and (3) the doctrine of economic loss bars recovery in this case. In addition, defendants argue that even if plaintiff was able to maintain this action, they could not be liable for damages incurred after the termination of their engagement with plaintiff's company.

For the reasons set forth below, this Court finds that this action is essentially an action for indemnification, and therefore, plaintiff, as a party who "willfully" failed to ensure that the IRS was paid employee withholding taxes, is not entitled to recovery from the defendants. Accordingly, this Court will grant defendants' motion for summary judgment.

Plaintiff, Steven R. Alten, is a citizen of Florida. Defendant Ellin & Tucker is an accounting firm headquartered in Baltimore, Maryland, which carries on a regular course of business in Delaware. Defendant Kaye is a principal in the firm of Ellin & Tucker, and at all times was acting as a principal and agent of and on behalf of Ellin & Tucker. The amount in controversy exceeds, exclusive of interest and costs, fifty thousand dollars. The Court's jurisdiction is based on diversity of citizenship in accordance with 28 U.S.C. § 1332. (D.I. 1.)

### II. FACTS

Because this summary judgment motion, in large part, raises only legal issues and this Court will grant the summary judgment motion solely on legal issues, only a short summary of the facts in the light most favorable to the plaintiff follows. In July of 1988, Alten, along with R. Griggs Levy, formed a corporation known as Delawater, Inc. ("Delawater"). (D.I. 1, ¶ 7.) Delawater was a factory direct distributorship of whole house water treatment systems in the State of Delaware. (Id., ¶ 8.) Because of its success and resultant expansion, Alten actively sought experts to oversee all accounting, tax, and other business needs of Delawater, and in April of 1989, Alten hired the defendant Kaye. (Id., ¶¶ 11, 19.) According to Alten, Kaye had agreed to provide "expert financial consulting and tax advice and supervision over Delawater's accounting beginning in April of 1989." (Id., ¶ 18.) It was understood that Kaye had a duty to "ensure compliance with all state and federal tax laws." (Id., ¶ 16.)

Prior to retaining Kaye, Delawater had treated its sales force as independent contractors who were individually responsible for payment of their own federal taxes. Kaye recommended that the sales force be treated as employees instead, and emphasized the importance of Delawater's withholding and payment of federal employee withholding taxes. (Id., ¶¶ 20–22.) Kaye had assured Alten that these taxes would be paid every month, and indeed starting around April of 1989 and each month thereafter, Alten was presented, for his signature, with a check for federal employee withholding taxes. (Id., ¶¶ 22, 24.)

In late September of 1989, Alten discovered that these checks had never been forwarded to the IRS. (*Id.*, ¶¶ 27, 28.) Although there were sufficient funds to cover these checks during the months they were written, by the time Alten discovered them in September, 1989, there were insufficient funds to pay them. (*Id.*, ¶¶ 29, 30.) As soon as Alten discovered these checks, he contacted the IRS and asked Kaye to accompany him to the meeting with the IRS. Kaye refused to do so. (*Id.*, ¶ 31.) In addition, although Alten requested Delawater's financial documentation from Kaye, Kaye did not provide it until January of 1990. (*Id.*, ¶ 32.) When Alten received the documentation, he discovered that Kaye had failed to monitor Delawater's finances as promised. (*Id.*, ¶ 34.)

Around November of 1989, Alten hired Mark Rosenman as Delawater's new accountant. (D.I. 38, Ex. D, p. 42.) In 1990, Delawater declared bankruptcy. (D.I. 1, ¶ 35.) In a letter dated November 15, 1990, the IRS recommended a 100% penalty against Alten under 26 U.S.C. § 6672. (D.I. 38, Ex. A.) Alten, with the help of Mark Rosenman and legal counsel, appealed within the IRS arguing that Alten was not a responsible party and did not act willfully. (*Id.*) In 1992, the IRS assessed a 100% penalty under 26 U.S.C. § 6672 against Alten for approximately $140,000.00 in past due federal employee withholding taxes for quarters ending: June 30, 1989; December 31, 1989; March 31, 1990; and June 30, 1990. (D.I. 38, Ex. B.) Alten did not appeal this determination.

### III. CHOICE OF LAW

A federal district court sitting in diversity must apply the choice-of-law rules of the state in which it sits to determine which state's substantive law governs the controversy before it. *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Therefore, this Court must apply the State of Delaware's choice-of-law rules. The plaintiff in the present case brings this action under both contract and tort claims. Under Delaware law, the "most significant relationship test" of the Restatement (Second) of Conflicts §§ 6, 145, 146, and 188, applies to both contract and tort actions. *Travelers Indemnity Co. v. Lake,* 594 A.2d 38, 44–47 (Del.1991).

In applying the "most significant relationship test" in tort cases, Delaware courts place considerable emphasis on "the place where the injury occurred." *Id.* at 47. Moreover, the Delaware Supreme Court has directed Delaware courts to apply the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties. *Id.* Since the injury occurred in Delaware, application of the "most significant relationship test" to the present case indicates that Delaware law would govern. In addition, none of the parties have argued, nor does this Court suggest, that any other state might have a more significant relationship to the occurrence than Delaware. Thus, Delaware's choice-of-law rules mandate that Delaware substantive law governs the tort claims in this case.

In applying the "most significant relationship test" in contract cases, Delaware courts place considerable emphasis upon "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location and subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Playtex Family Products, Inc. v. St. Paul Surplus Lines Ins. Co.,* 564 A.2d 681, 688–89 (Del.Super.1989). In the present case, although there is no indication in the record as to where the contracting and place of negotiation were, the contract involved the financial affairs of Delawater which was located in Delaware. In addition, all parties have operated under the assumption that Delaware law applies. Therefore this Court assumes Delaware has the most significant relationship to the contract, and thus, this Court finds that Delaware substantive law would be applicable to any contract claims in this case.

### IV. DISCUSSION

The defendants argue that the plaintiff's action is essentially an action for indemnity[1]

---

1. The defendants also argue that the doctrine of economic loss bars any claims by plaintiff based on contract. In light of this Court's ruling, this Court finds it unnecessary to determine this issue.

and as such should be dismissed. This Court agrees. The plaintiff bases this action on three alternate theories: breach of contract, accounting malpractice, and breach of fiduciary duty. However, as the plaintiff's attorney admitted at oral argument on May 18, 1994, the plaintiff is in essence seeking to shift the responsibility to the defendants to pay the IRS. This shifting of responsibility is the crux of the concept of indemnification. W. Page Keeton *et al., Prosser & Keeton on Torts* § 51, at 344 (5th ed. 1984) ("indemnity is a shifting of responsibility from the shoulders of one person to another ..."); 41 Am.Jur.2d *Indemnity* § 1, at 687 ("indemnity is a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other.")

### A. Claim For Indemnification Under 26 U.S.C. § 6672 [2]

It is well established that there is no private federal right of contribution or indemnity under 26 U.S.C. § 6672. *Sinder v. United States,* 655 F.2d 729, 732 (6th Cir.1981); *Swift v. Levesque,* 614 F.Supp. 172, 173 (D.Conn.1985); *DiBenedetto v. United States,* 75–1 U.S.T.C. ¶ 9503, 1974 WL 791 (D.R.I.1974). However, courts have held that a person found liable under § 6672 has a right to bring an action for contribution or indemnity if the right is asserted under state law.[3] *Schoot v. United States,* 664 F.Supp.

293, 298 (N.D.Ill.1987); *Swift,* 614 F.Supp. at 177. Since this action consists of state claims brought under diversity jurisdiction, this Court will analyze whether the plaintiff is entitled to indemnity under Delaware law.

### B. Delaware Law On Indemnification

Delaware courts have recognized three sources for an indemnification action: (1) express contract; (2) implied-in-contract; and (3) implied-in-tort. *Ianire v. University of Delaware,* 255 A.2d 687 (Del.Super.1969), *aff'd, Diamond State Tel. Co. v. University of Delaware,* 269 A.2d 52 (Del.1970). This Court finds that the plaintiff is barred from asserting an indemnification claim based on any of these theories.

### 1. Express Contract for Indemnification

In this case, the plaintiff does not allege, and there is no evidence in the record showing, the existence of an express contract for indemnity. In fact, the only written aspect of the contract specifically states that, "[o]ur engagement cannot be relied upon to disclose errors, irregularities, or illegal acts, including fraud or defalcation, that may exist. However, we will inform you of any such matters that come to our attention." (D.I. 38, Ex. C.)

### 2. Implied Contract for Indemnification

When there is no express contract for indemnification, the Delaware Courts have recognized an implied-in-contract theo-

---

2. 26 U.S.C. § 6672(a) reads:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

26 U.S.C. § 6672(a) (West 1989).

3. A few courts have held that there is no right to contribution or indemnification even if the right is asserted under state law. *Rebelle v. United States,* 588 F.Supp. 49 (M.D.La.1984); *Moats v. United States,* 564 F.Supp. 1330, 1334 (W.D.Mo. 1983), *aff'd, U.S. v. O'Crowley,* 786 F.2d 1171

(8th Cir.1986). In *Rebelle,* the court reasoned that:

> [W]hen a person *willfully* acts and has a penalty assessed pursuant to section 6672, that person should not and must not have that liability for the penalty shared or placed wholly on another because of some contractual or fiduciary duty. The sound policy reasons against allowing a right of contribution or indemnity to someone who has willfully, consciously, and intentionally acted must and do apply under the facts of this case. *Rebelle,* 588 F.Supp. at 52. However, this Court agrees with the courts that have rejected this argument. *See Schoot,* 664 F.Supp. at 297; *Swift,* 614 F.Supp. at 177. The § 6672 penalty is meant to be a collection device for the IRS; it is not meant to punish. *Id.*

ry of indemnification where there is a contractual relationship, although not one for indemnity, between the two parties.[4] *Diamond State Tel. Co.*, 269 A.2d at 56. *See also New Zealand Kiwifruit Marketing v. City of Wilmington*, 825 F.Supp. 1180, 1194 (D.Del.1993); *Cumberbatch v. Bd. of Trustees, Etc.*, 382 A.2d 1383, 1388 (Del.Super.1978). However, this right to indemnity is not available to a party whose active participation in the injury has gone beyond negligence.[5] *See* 42 C.J.S. *Indemnity* § 32, *citing Considine Company Inc. v. Shadle, Hunt & Hagar*, 187 Cal.App.3d 760, 232 Cal.Rptr. 250, 257 (1986); *Cahill Brothers, Inc. v. Clementina Company*, 208 Cal.App.2d 367, 25 Cal.Rptr. 301, 309 (1962)[6].

In this case, there is evidence of a contractual relationship between the plaintiff and the defendants, and the plaintiff's breach of contract claim could possibly support a right to an implied-in-contract indemnity.[7] The plaintiff, nevertheless, cannot recover under this theory of indemnification because the IRS found him to be liable under § 6672.

One who has been found to be liable under 26 U.S.C. § 6672, has necessarily also been found to be "willful." *United States v. Sotelo*, 436 U.S. 268, 274, 98 S.Ct. 1795, 1799–1800, 56 L.Ed.2d 275 (1978) ("the fact that respondent was found liable under § 6672 necessarily means that he was 'required to collect, truthfully account for and pay over' the withholding taxes, and that he willfully failed to meet one or more of these obligations"). Mere negligence is not sufficient to prove "willfulness" under § 6672. *Kalb v. United States*, 505 F.2d 506, 511 (2d Cir.1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The term "willful" in the context of § 6672(a) has been interpreted by courts to mean "intentional, knowing and voluntary." *Monday v. United States*, 421 F.2d 1210, 1215 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). *See Dudley v. United States*, 428 F.2d 1196, 1198 (9th Cir.1970); *Kalb*, 505 F.2d at 511; *Feist v. United States*, 221

---

**4.** A helpful explanation of the implied-in-contract indemnity can be found at 42 C.J.S. *Indemnity* § 31:

A right to indemnity, while not implied in every contract or contractual relationship, may be claimed on the basis of an implied contract, which can arise either from the conduct of the parties or be implied from the nature of their relationship, whether it be contractual or other legal relationship, and from given warranties and covenants, or be otherwise implied from unique special factors indicating the parties' intent that the party from whom indemnity is sought be ultimately liable.

42 C.J.S. *Indemnity* § 31, at 121 (1991).

**5.** The Delaware Supreme Court has not specifically addressed this proposition of law. When there are no Delaware cases on point, a federal court must predict what the highest state court would do. *Valley Forge Ins. Co. v. Jefferson*, 628 F.Supp. 502, 505 (D.Del.1986), *citing Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 209, 76 S.Ct. 273, 279–80, 100 L.Ed. 199 (1956). In doing so, a federal court should look to lower court decisions as indicia of how the state's highest court might decide. *Id.* Delaware Courts have long held that, "the law does not favor contracts which indemnify one against the consequences of his own negligence." *Howard, Needles, Tammen & B v. Steers, Perini & P*, 312 A.2d 621, 624 (Del.1973). In addition, the Superior Court of Delaware has held that:

It is an elementary tenet of the law of indemnity and contribution that such a cause of action will not arise for an unlawful or illegal act by a party, not expressly approved or authorized by the party against whom relief is sought. ... Thus, in a case such as this where the act complained of is an intentional tort by [the indemnitee], no contribution or indemnification will lie.

*Eastridge v. Thomas*, 1987 WL 9605 at *2 (Del.Super. April 13, 1987) (citations omitted).

If faced with the issue, this Court predicts that the Delaware Supreme Court would bar a party whose actions go beyond negligence from an indemnity action implied-in-contract.

**6.** The California courts bar a party from seeking indemnity implied-in-contract only when the party actively participates in some act of negligence, but not when he merely fails "to perform the duty imposed upon him by law." *Bear Creek Planning Committee v. Title Insurance & Trust Company*, 164 Cal.App.3d 1227, 211 Cal.Rptr. 172, 181 (1985). It is unclear as to which types of negligence the Supreme Court of Delaware would hold as barring an implied-in-contract indemnity. This Court does not hold that the Delaware Supreme Court would adopt the California courts' standard but only that the Delaware Supreme Court would most likely preclude those persons whose actions go beyond negligence.

**7.** This Court is not deciding the issue of whether there is an implied contract of indemnity.

Ct.Cl. 531, 607 F.2d 954, 961 (1979) (" '[w]ill-fulness' has been almost universally defined as an intentional, voluntary, conscious act or omission"). In addition, an act is "willful" if it was done with "reckless disregard for obvious or known risks." *Monday*, 421 F.2d at 1215; *Kalb*, 505 F.2d at 511; *Feist*, 607 F.2d at 961.

Since the plaintiff has been adjudged to have "willfully," failed to pay the federal employee withholding taxes, his participation goes beyond negligence, and therefore, he cannot be indemnified.

### a. Collateral Estoppel Effect of IRS Determinations

The plaintiff[8] argues that this Court should not give collateral estoppel effect to the IRS' determination that he was "willful" because: (1) that finding is a "judicially unreviewed finding" of an administrative agency; (2) the IRS was not "acting in a judicial capacity"; and (3) the definition and standards to determine "willfulness" under § 6672(a) are not the same as those used to determine "willfulness" under tort and contract law, and thus, the issue as to plaintiff's "willfulness" under tort and contract law has "never been fully and fairly litigated." (D.I. 45, pp. 2–7.)

### i. Congressional Intent

The plaintiff, citing *Astoria Federal Savings & Loan Assoc. v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), argues that an administrative agency's judicially unreviewed findings have no preclusive effect. In *Astoria*, the Supreme Court held that state administrative findings under the

Age Discrimination in Employment Act of 1967 ("ADEA") have no preclusive effect. However, *Astoria* does not stand for the proposition that *all* judicially unreviewed findings of *all* administrative agencies have no preclusive effect. *Astoria*'s holding is based on the premise that "the question is not whether administrative estoppel is wise but whether it is intended by the legislature." *Astoria*, 501 U.S. at 108, 111 S.Ct. at 2169. The Court in *Astoria* examined the statutory framework of the ADEA and held that Congress did not intend to give estoppel effect to the findings of state administrative agencies.

In the absence of congressional intent on the issue of preclusion, the Supreme Court dictated that "the courts may take it as given that Congress has legislated with an expectation that the principle will apply." *Id.* The Supreme Court noted that:

We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 [86 S.Ct. 1545, 1560, 16 L.Ed.2d 642] (1966). Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.

---

8. The defendants argue that collateral estoppel should be applied to preclude the plaintiff from relitigating the issue of the defendants' liability under § 6672. As a defense to his own assessment, the plaintiff sought to blame the defendants for the failure to pay the federal employee taxes. (D.I. 38, Ex. A.) The defendants argue that because the IRS nevertheless decided to assess the plaintiff with a penalty, the IRS necessarily determined that the defendants were not liable under § 6672.

This Court does not agree that merely because the IRS refused to shift all of the liability to the defendants, it had necessarily absolved the defen-

dants completely. "There may be more than one responsible person within a company, and it is not necessary that the individual against whom the assessment is made be responsible for all of the duties set forth in the statute." *Hutchinson v. United States*, 559 F.Supp. 890, 892 (N.D.Ohio 1982). Although the IRS may have indeed determined the defendants' liability, neither party has submitted any documentation of the proceedings or determination of the Appeals Office of the IRS.

In any event, this issue is of little consequence in this case since this Court is granting the defendants' motion for summary judgment on other grounds.

*Astoria,* 501 U.S. at 107–08, 111 S.Ct. at 2169–70. With respect to IRS determinations of liability under § 6672(a), there is no express congressional intent concerning administrative estoppel. In addition, in contrast to the statutory framework of ADEA, the statutory framework does not in any way indicate a congressional intent to overcome a presumption of administrative estoppel with respect to IRS determinations.

■ Once the IRS has assessed a taxpayer under § 6672(a), Congress has narrowly directed his route of appeal. After the initial assessment by a district office, the taxpayer may appeal to the Appeals Office. 26 C.F.R. §§ 601.103(c)(1), 601.106 (1993). After the Appeals Office, a taxpayer assessed under § 6672(a) has only one method of further appeal: he must pay all or part of the assessment, file a claim for refund with the district director, and if such a claim is rejected or no action is taken with respect to the claim within 6 months from the date of filing, bring a civil action in the United States District Court or United States Claims Court.[9] 26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1); 26 C.F.R. § 601.103(c)(3); 22 A.L.R.3d 8, 188 (1968). If this Court did not give those IRS determinations (which have not been properly appealed) collateral estoppel effect, it would be, in effect, creating another avenue of appeal. If anything, the statutory framework indicates congressional intent to support a court's application of collateral estoppel and *res judicata* to IRS determinations.

### ii. IRS Proceedings

The fact that there is no congressional intent precluding courts from giving collateral estoppel effect to IRS determinations does not require this Court to automatically give such effect to IRS findings. The Supreme Court has qualified the use of collateral estoppel and *res judicata* to determinations made by administrative agencies only when they are "acting in a judicial capacity." *Utah Constr.,* 384 U.S. at 422, 86 S.Ct. at 1560. The plaintiff argues that the tax assessment procedures implemented by the IRS do not rise to the level of "acting in a judicial capaci-

ty," and thus should not be given preclusive effect. He points to the lack of procedures such as "the ability to call, examine, cross-examine, and subpoena witnesses." (D.I. 45, p. 4 n. 1.)

■ However, whether an administrative agency was "acting in a judicial capacity" is not solely determined by whether the administrative agency used such judicial procedures as "the ability to call, examine, cross-examine, and subpoena witnesses." *A. Duda & Sons Cooperative Association v. United States,* 495 F.2d 193, *withdrawn,* 504 F.2d 970 (5th Cir.1974); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4475 p. 767 (1981) ("the suitability of preclusion is affected not only by administrative procedure but also by the relationships between agency and court contemplated by each specific regulatory scheme").

In *A. Duda,* the Fifth Circuit held that the IRS was acting in a judicial capacity when it revoked the taxpayer's exempt status with a letter dated December 29, 1965. Although the taxpayer had an opportunity to appeal this revocation, it failed to do so. On September 2, 1966, the IRS then assessed the taxpayer with a deficiency, and the taxpayer contested this assessment through a refund suit. During the refund suit, the Government stipulated that the December 29, 1965 revocation:

> [W]as based solely on the asserted noncompliance by plaintiff with the technical requirements of Section 521, and that plaintiff in fact met the said technical requirements of Section 521. Defendant's counsel also admitted that the attempted revocation had not been based, in whole or in part, on the contention that plaintiff was not "operating on a cooperative basis" . . . .

*A. Duda,* 495 F.2d at 196.

The lower court held that because of this stipulation the revocation was a nullity. In its first opinion, the Fifth Circuit held that the taxpayer was collaterally estopped from relitigating the IRS's December 29, 1965 revocation and that the Government's stipulation

---

**9.** The Tax Court does not have jurisdiction to review an IRS assessment made pursuant to 26 U.S.C. § 6672. 22 A.L.R.3d at 201 (citations omitted).

was irrelevant. The Fifth Circuit later withdrew this opinion and substituted an opinion holding the IRS to its stipulation. *A. Duda*, 504 F.2d 970 (5th Cir.1974). Because in the present case, the IRS is not even a party, there is no admission of error by the IRS, and the IRS determination was not based merely on failure to meet "technical" requirements, this Court finds the language and reasoning of the earlier opinion of the Fifth Circuit applicable and persuasive:

> [W]hen the failure to give res judicata effect to a finding of an administrative agency would encourage litigants to bypass prescribed appeal procedures of an agency, that factor should weigh strongly in the decision [of whether res judicata applies to administrative findings]. Under the *Utah Construction* case, the first question was whether the action is "judicial." In answering that question, Professor Wright notes that:
>
>> The best approach is to avoid the labels that have been attached to various functions for other purposes and to determine what is *judicial or nonjudicial for* purposes of res judicata by emphasizing factors which relate to res judicata. Wright, § 18.08.
>
> In this case, the revocation of appellee's exemption must be considered a judicial act for the purpose of res judicata. The revocation was directed specifically at the appellee.... Although, as appellee correctly argues, the revocation had no immediate effect on its tax liability, the revocation did have an immediate effect upon the status of the appellee. In addition, appellee was well informed of the progress of the Service's reconsideration of its tax-exempt status. Finally, ... [the appellee] could have availed itself of the entire array of IRS review procedures....

*A. Duda*, 495 F.2d at 197.

■ In the present case, the assessment was directed specifically to the plaintiff, the assessment had an immediate effect on his tax liability, the plaintiff was aware of the IRS's proceedings, and the plaintiff could have appealed the assessment to a federal court but chose not to do so. Instead, the plaintiff seeks to circumvent that appeals process and relieve himself of his liability by shifting that responsibility to the defendants. Holding that collateral estoppel does not apply to IRS determinations would encourage other taxpayers to bypass the IRS appeals process.

### *iii. Definition of "Willfulness"*

■ Whether collateral estoppel applies to the IRS proceedings does not end the inquiry. Generally, issue preclusion may be invoked when: (1) the identical issue was decided in a prior adjudication; (2) there was final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question. *Bd. of Trustees of Trucking Emp. Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir.1992).

■ Plaintiff, at oral argument, focused on the first requirement. He argued that the meaning of "willful" under § 6672(a) is different from the meaning for "willful" in the context of behavior which would preclude implied-in-tort or implied-in-contract indemnification. He argued that a party could be found "willful" under § 6672 even without bad intent. Although it is true that "it is not necessary that there be intent to defraud or to harm the Government"[10] to be held liable under § 6672, it is also not necessary to have such intent to be barred from an indemnity action. Any act which goes beyond negligence bars a party from bringing an indemnity action, and the IRS necessarily determined that the plaintiff's acts were beyond negligent when it determined that he was liable under § 6672. *See* discussion on definition of willfulness under § 6672 *supra; Swift*, 614 F.Supp. at 175 (under Connecticut law, "indemnification is permissible ... only upon a showing that one party had 'primary' liability and that the party with 'secondary' or 'passive' liability had no 'control of the situation' and '[did] not know of the fault [and had] no reason to anticipate it'.... Clearly, defendant ... cannot make such a

---

10. *Feist*, 607 F.2d at 961.

showing in light of the previous jury finding of willfulness on his part").

### 3. *Implied–In–Tort Indemnification*

 Where neither an express nor an implied contract for indemnification exists, Delaware courts have also recognized an equitable action for indemnification. *Ianire,* 255 A.2d at 690. *See American Insurance Co. v. Material Transit, Inc.,* 446 A.2d 1101, 1104 (Del.Super.1982); *Cumberbatch,* 382 A.2d at 1389. However, unlike the indemnity implied-in-contract, the party pursuing an action for indemnity implied-in-tort must have a common liability to the initial plaintiff with the proposed indemnitor. *David B. Lilly Co., Inc. v. Fisher,* 799 F.Supp. 1562, 1563–64 (D.Del.1992), *aff'd,* 18 F.3d 1112 (3d Cir. 1994). *See Diamond State,* 269 A.2d at 56.

 In this case, the initial plaintiff, the IRS, never assessed a penalty against the defendants, and therefore, there is no common liability between the parties in this case.

 In addition, an action for indemnification based in tort is barred when a party's action goes beyond mere passive negligence.[11] *Ianire,* 255 A.2d at 696 ("recovery by the employee in such a situation imposes an undue burden on a party whose *negligence is at most technical, vicarious or passive,* while the culpable party ... goes free")[12] (emphasis added); *Council of Unit Owners of Sea Colony East v. Freeman Associates,* 1989 WL 40973, at \*4 (Del.Super. April 11, 1989) ("in the absence of a contract for indemnity an implied right of indemnity

may arise only in favor of a party who is secondarily negligent against the party that is primarily negligent ..."), *appeal denied,* 567 A.2d 34 (Del.1989); *Prosser & Keeton on Torts* § 51, at 343 (it is an "obvious fact that there can be no indemnity in favor of the intentional or reckless tortfeasor").

. Since the plaintiff's actions would constitute active negligence, and in fact intentional or reckless behavior, an action based on implied-in-tort indemnification is not viable.

### V. *CONCLUSION*

Because the plaintiff has been adjudged to have acted "willfully" under 26 U.S.C. § 6672, Delaware law bars him from recovery based on any of his theories in which he seeks indemnity. Therefore, this Court must grant the defendants' motion for summary judgment as a matter of law.

A judgment will be entered forthwith in accordance with this opinion.

**11.** In *Ianire,* Judge Bifferato outlined the factual situations which would support a claim for indemnification:

A joint tort-feasor may generally recover indemnity only in the following situations:
(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.
(2) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.
(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.
(4) Where the one seeking liability has incurred liability has incurred liability [sic]

merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.
(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.
*Ianire,* 255 A.2d at 692.

**12.** The Supreme Court rejected the Superior Court's ruling that the University could seek indemnification in tort based on the fact that Diamond had already paid workmen's compensation and allowing an indemnity suit based in tort would contravene the dictates of Delaware's Workmen's Compensation laws. *Diamond State,* 269 A.2d at 56. However, the Delaware Supreme Court did not in any way suggest that it was rejecting the Superior Court's ruling on any other bases.