COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE
MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 7, 2023

Jeremy D. Eicher
Eicher Law LLC
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801

Douglas D. Herrmann
Troutman Pepper Hamilton Sanders LLP
1313 Market Street, Suite 5100
Wilmington, DE 19899

Frank E. Noyes, II
Offit Kurman, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, DE 19801

Jennifer C. Voss
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
Wilmington, DE 19801

Re: *In re TransPerfect Global, Inc.*,
C.A. Nos. 9700-CM, 10449-CM

Dear Counsel:

This letter resolves Respondent TransPerfect Global, Inc.'s objections to Custodian

Robert Pincus's fee petitions for legal expenses incurred between January 2021 and March

2023.[1]  TransPerfect's objections are overruled, with one narrow exception explained

below.

The court assumes the reader's familiarity with the extensive procedural history of

the above-captioned lawsuits.  The short version is that, on April 30, 2021, this court issued

a memorandum opinion that, among other things, resolved TransPerfect's objections to

---

[1] *See* C.A. No. 9700-CM, Docket ("Dkt.") 1746; *see also* Dkt. 848; Dkt. 1243 ("Feb. 15, 2018 Order"); Dkt. 1601; Dkt. 1605 ("Apr. 30, 2021 Order") (together, the "Orders"). Civil Action Numbers 9700-CM and 10449-CM have been litigated in a coordinated fashion since their inception.  Docket entries refer to C.A. No. 9700-CM.

Pincus's fee petitions from May 2019 through December 2020 (the "April 30, 2021 Opinion").[2] The court largely overruled TransPerfect's objections, sustaining only minor objections relating to (i) work performed to unseal confidential court records; (ii) work performed in connection with settlement efforts; and (iii) miscellaneous billing statements for clerical or administrative work.[3] So culled, the result was a fee and expense award of $3,242,251.[4] The court also entered partial final judgment under Court of Chancery Rule 54(b) given the absence of a just reason to delay.[5]

TransPerfect appealed on May 14, 2021.[6] On June 14, 2021, I stayed the objection and briefing process on future quarterly fee petitions pending appeal.[7] I reasoned that the "Supreme Court's ruling will moot or affect arguments made to this Court, such that staying objections pending resolution of the appeal will promote efficiency and conserve judicial and litigant resources."[8]

---

[2] *In re TransPerfect Glob., Inc.*, 2021 WL 1711797 (Del. Ch. Apr. 30, 2021), *recons. denied*, 2021 WL 2030094 (Del. Ch. May 21, 2021), *aff'd sub nom. TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630 (Del. 2022), *cert. denied*, 143 S. Ct. 574 (2023).

[3] *See In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at *32, *42, *47.

[4] *Id.* at *48.

[5] Dkt. 1605 ¶ 6.

[6] Dkt. 1619.

[7] Dkt. 1631.

[8] *See id.*

On June 1, 2022, the Delaware Supreme Court affirmed the part of the April 30, 2021 Opinion addressing the fee petitions and their objections.[9] The high court held that this court did not abuse its discretion, although it reversed the contempt order against Philip Shawe with the effect that Shawe could not be personally liable for the fees.[10] TransPerfect petitioned the U.S. Supreme Court for a writ of certiorari on November 3, 2022, which the U.S. Supreme Court denied on January 9, 2023.[11]

During the period when the stay was in effect, TransPerfect kept generating work for Pincus and his counsel. So Pincus kept filing fee petitions.[12] And TransPerfect kept objecting.[13] Specifically, on November 9, 2022, TransPerfect Holdings, LLC, TransPerfect's sole owner, initiated a federal securities fraud action against Pincus and Credit Suisse Securities (USA) LLC for alleged misrepresentations made in their respective roles as Custodian and financial advisor during the court-ordered auction (the "Securities Action").[14] Pincus retained Williams & Connolly LLP and Troutman Pepper Hamilton Sanders LLP to represent him in the Securities Action. Pincus and Credit Suisse moved to

---

[9] *See In re TransPerfect Glob., Inc.*, 278 A.3d at 630.

[10] *Id.* at 636.

[11] 143 S. Ct. at 574.

[12] *See* Dkts. 1581, 1617, 1654, 1675, 1683, 1703, 1720, 1730, 1750.

[13] *See* Dkts. 1626–1628, 1704–1713, 1718, 1722–1723, 1736–1737, 1752–1756.

[14] *See* Dkt. 1746, Ex. A (Complaint in *TransPerfect Hldgs., LLC v. Pincus et al.*, C.A. 1:22-cv-01477-RGA (D. Del. Nov. 9, 2022) ("Securities Compl.")).

dismiss the Securities Action, and their motion is currently pending before the District

Court of Delaware.[15]

A portion of Pincus's requested fees were incurred in defending of the Securities

Action. On January 24, 2023, Pincus filed a report and fee petition for $224,109.28 for

legal fees from October through December 2022.[16] Of this amount, $106,594.03 was

incurred defending the Securities Action.[17] On April 21, 2023, Pincus filed a report and

fee petition for $463,179.34 for legal fees from January through March 2023.[18] In that

petition, Pincus reported a cumulative total of $384,590.57 incurred defending the

Securities Action.[19]

TransPerfect filed untimely objections to Pincus's fee petitions for October and

November 2022.[20] I held a status conference on March 2, 2023, as all echelons of appeal

were resolved by then.[21] At the hearing, counsel for TransPerfect stated that fees for the

Securities Action are non-reimbursable under federal law and asked that I give the District

Court a first pass at evaluating the relevant fee petitions.[22] I denied TransPerfect's request

---

[15] *See* Dkt. 1748 (Pincus's Answering Br.) at 7.

[16] Dkt. 1730 (Jan. 24 Rep.) at 3.

[17] *Id.* at 2–3.

[18] Dkt. 1750 (Apr. 21 Rep.).

[19] *Id.* at 3.

[20] Dkts. 1736–1737.

[21] Dkt. 1747.

[22] *Id.* at 6:4–12.

to defer the fee requests made in connection with the Securities Action to the federal court. I further held that I would consider TransPerfect's fee objections, although the objections to the months of October and November were untimely.[23]  The parties briefed the objections, and TransPerfect continued filing objections for the months of January through March 2023.[24]

TransPerfect's objections to Pincus's fee petition fall into two sets—one relating to Skadden's fees between January 2021 and April 2023, and the other relating to fees incurred by Williams & Connolly and Troutman Pepper between October 2022 and April 2023 in connection with the Securities Action.

Starting with the first set of objections, TransPerfect argues that, among other things:

- Skadden bills for work relating to this matter at a higher rate than other matters, and is in any event, its billing rates are too high;[25]

- Skadden's supporting affidavits for Pincus's fee petitions are insufficient;[26]

- Pincus wrongly submitted fee petitions on a quarterly, rather than monthly, basis;[27]

---

[23] *Id.* at 8:3–19.

[24] Dkts. 1752–1754.

[25] *See, e.g.*, Dkts. 1626–1628, 1704, 1709, 1712–1723.

[26] *See, e.g.*, Dkts. 1627, 1706, 1722.

[27] *See, e.g.*, Dkts. 1626, 1705–1707, 1711.

- Pincus failed to establish that TransPerfect or Shawe have acted in bad faith, and instead, Skadden and Pincus have acted in bad faith;[28]

- Fees relating to the separate H.I.G. action are not recoverable or are otherwise excessive;[29]

- The Escrow should reimburse the fees rather than TransPerfect;[30] and

- Other miscellaneous objections, including that Skadden used block billing, provided vague entries, used too many partners to do legal research, and excessively staffed this case.[31]

The court has heard all these arguments before. And the April 30, 2021 Opinion addressed each when raised against Pincus's earlier fee petitions.[32] From my review of the fee petitions and their subsequent objections, the logic of the April 30, 2021 Opinion applies with equal force for Skadden's fees from January 2021 onward. The April 30, 2021 Opinion was affirmed on appeal, allowing this decision to resolve them in short order. TransPerfect's twice failed, regurgitated objections are overruled.

This disposes of all of TransPerfect's objections to Skadden's fees save one, which might be moot at this point. In January 2021, Pincus and Skadden sought reimbursement for fees associated with the "unsealing of billing records."[33] The April 30, 2021 Opinion

---

[28] *See, e.g.*, Dkts. 1626–1628, 1706–1708, 1721.

[29] *See, e.g.*, Dkts. 1628, 1704–1708; *see also* Dkt. 1315, Ex. 1, Attach. B (H.I.G. Compl.).

[30] *See, e.g.*, Dkts. 1627–1628, 1712.

[31] *See, e.g.*, Dkts. 1626–1628, 1705–1706. In this vein, TransPerfect also notes that Pincus hired Skadden, so Skadden was not TransPerfect's choice of law firm. *See* Dkt. 1711. TransPerfect does not explain why or how this fact is relevant to the fee petitions.

[32] *See generally In re TransPerfect Glob., Inc.*, 2021 WL 1711797.

[33] *See* Dkt. 1582 at 2–3.

stated that work performed to unseal confidential records is out of scope for reimbursement. That reasoning applies with equal force to legal work done in January 2021, even though the April 30, 2021 Opinion only addressed fee petitions through December 2020.[34] To the extent that Pincus and Skadden seek fees for that activity, then the petition is denied.

Turning to the second set of objections, TransPerfect raises several arguments for why federal law prohibits Pincus from receiving attorneys' fees in connection with the Securities Action.[35] None are availing.

TransPerfect says that Pincus's defense of the Securities Action falls outside the scope of his role as Custodian, so his fees may not be advanced under this court's Order dated February 15, 2018.[36] Under that Order, Pincus may recover "fees and expenses incurred . . . in defending or prosecuting any civil, criminal, administrative or investigative claim, action, suit or proceeding reasonably related to the Custodian's responsibilities under the Sale Order or this Order" from TransPerfect, "in advance of the final disposition of such claim[.]"[37]

---

[34] *See In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at *1 (stating that the court only reviewed petitions for fee reimbursement incurred between May 2019 and December 2020); *id.* at *42 (deciding not to reimburse expenses relating to the removal of "confidentiality restrictions").

[35] *See* Dkt. 1746 ("TransPerfect's Mar. 17 Objs.") at 8–20.

[36] *Id.* at 10–11.

[37] Feb. 15, 2018 Order ¶ 7.

Pincus's defense of the Securities Action is "reasonably related" to his responsibilities as Custodian. The very first line of the complaint in the Securities Action challenges the "conduct of Defendants Robert Pincus and Credit Suisse *while acting in their respective roles as court-appointed Custodian and the Custodian's financial advisor* in connection with a judicially ordered auction."[38] The complaint goes on to say that Pincus wrongly told TransPerfect Holdings that third parties had made "higher value bids[,]" inducing TransPerfect Holdings to "bid $70 million more to win the auction."[39] Defending the Securities Action is therefore related to Pincus's responsibilities as Custodian.

Next, TransPerfect argues that federal securities law preempts Pincus's request under these circumstances, so allowing reimbursement of fees would run afoul of the U.S. Constitution's Supremacy Clause.[40] TransPerfect cites federal case law for the proposition that "indemnification [of defendants] runs counter to the policies" of federal securities law, which focuses on "protect[ing] investors" as "victims" of securities fraud.[41] These cases

---

[38] Securities Compl. at 1.

[39] *Id.* at 1; *see also id.* ¶¶ 94–121.

[40] *See* TransPerfect's Mar. 17 Objs. at 12–13; U.S. Const. art. IV, § 2.

[41] *Eichenholtz v. Brennan*, 52 F.3d 478, 483–84 (3d Cir. 1995); *see also In re Livent Sec. Litig.*, 193 F. Supp. 2d 750, 754 (S.D.N.Y.) ("[T]he Court concurs with the long line of cases which hold that a defendant in a securities fraud action is prohibited from availing himself of indemnification"); *Fromer v. Yogel*, 50 F. Supp. 2d 227, 238 (S.D.N.Y. 1999) (stating that allowing indemnification in such circumstances would "allow a tortfeasor to shift liability for intentional misconduct onto another joint tortfeasor and thereby undercut the deterrence goals of the securities laws."); *Globus v. Law Rsch. Servs., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969) (explaining the rationale for this rule: "[u]nderwriters who knew they could be indemnified simply by showing that the issuer was 'more liable' than they (a process not too difficult when the issuer is inevitably closer to the facts) would have a

generally hold that indemnification under contract or common law is unavailable to a defendant found liable for "knowingly and wil[l]fully" violating federal securities law.[42]

The cases cited by TransPerfect are readily distinguishable in several ways. For one, they address indemnification for a defendant's share of damages. By contrast, the fee petitions address advancement for a defendant's attorneys' fees. Relatedly, these cases foreclose indemnification after a finding of liability. By contrast, TransPerfect Holdings has merely alleged Pincus engaged in willful, fraudulent behavior, but the District Court in the Securities Action has yet to make any findings and may dismiss the case at the pleading stage. Furthermore, these cases deal with indemnification under contract or under federal common law principles. By contrast, here, the fee-shifting at issue is the result of a court order, which implicates policy concerns pertaining to the integrity of judicial proceedings not addressed in TransPerfect's cited case law. TransPerfect's reliance on these authorities is misplaced.

Next, TransPerfect argues that fee-shifting related to the Securities Action infringes upon its parent entity's First Amendment right to petition the government for a redress of

---

tendency to be lax in their independent investigations."); *cf. Alten v. Ellin & Tucker, Chartered*, 854 F. Supp. 283 (D. Del. 1994); *Lucas v. Hackett Assocs. Inc.*, 18 F. Supp. 2d 531, 535–37 (E.D. Pa. 1998) (holding that indemnity claims relating to "de facto" federal securities claims are barred, but not barring indemnity claims premised "solely on state law"); *Alvarado P'rs, L.P. v. Mehta*, 723 F. Supp. 540, 553 (D. Colo. 1989); *see also* TransPerfect's Mar. 17 Objs. at 8–9 (collecting these cases).

[42] *Fromer*, 50 F. Supp. 2d at 238.

grievances.[43]   TransPerfect is apparently concerned about the "chill[ed] access to the courts" that would result were its parent, TransPerfect Holdings, required to pay attorneys' fees under a court order.[44]   Admittedly, it is hard to imagine anything deterring TransPerfect, Shawe, or their affiliates from accessing courts (in Delaware or elsewhere). Indulging the hypothetical, however, TransPerfect's argument still fails.

The First Amendment protects the "right of the people . . . to petition the Government for a redress of grievances."[45]   "Petitioning serves numerous, fundamental interests of petitioners alike.  It is 'essential to freedom,' liberty and self-government."[46] "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs."[47]   "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government[.]"[48]

---

[43] TransPerfect's Mar. 17 Objs. at 15–20.

[44] *Id.* at 16–17.

[45] U.S. Const. amend. I.

[46] *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017) (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382 (2011)).

[47] *Guarnieri*, 564 U.S. at 389.

[48] *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 896–897 (1984); *see also Guarnieri*, 564 U.S. at 387 ("This Court's precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes.").

Although court access can implicate the Petition Clause, TransPerfect cites no cases to support its stance that court-ordered advancement or indemnification are categorically unconstitutional. Indeed, countless cases of this court alone have ordered fee-shifting and reimbursement. And the U.S. Supreme Court has affirmed trial courts' powers to enter sanctions against litigants, which includes fee-shifting.[49] By TransPerfect's logic, these fairly commonplace aspects of the American judicial system flout constitutional limits—an unjustified and impractical approach to constitutional law.

Relatedly, TransPerfect seems to invoke a separate First Amendment argument relating to free speech principles. Without explaining why, TransPerfect states that its obligations under the Orders "can be likened to a content neutral[] time, place[,] or manner restriction on speech[.]"[50] Actually, they cannot.

TransPerfect argues in the alternative that Pincus should have to post a bond to recover fees relating to the Securities Action if he is "adjudged liable[.]"[51] But the Orders do not require Pincus to post a bond, and the court declines to impose such a requirement now.

Tacitly acknowledging the weakness of its constitutional arguments, TransPerfect also lodges challenges to the fee amounts that Pincus requested for defending the Securities

---

[49] *See, e.g.*, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 546 (2014) ("[C]ourts already possess the inherent power to award fees in cases involving misconduct or bad faith.").

[50] TransPerfect's Mar. 17 Objs. at 17.

[51] *Id.* at 7.

Action.   The court need not dilate extensively on these objections because, again, TransPerfect largely rehashes arguments already rejected in this court's April 30, 2021 Opinion as affirmed on appeal.[52]  The quasi-original spin is that TransPerfect now lobs its objections at Williams & Connolly rather than Skadden.

TransPerfect argues that Williams & Connolly failed to meet and confer on any disputed fees, violating the Orders.[53]  On January 4, 2023, however, Williams & Connolly asked TransPerfect to pay the fees and offered "to discuss any aspect of this" by phone.[54] After initially expressing interest in a meet-and-confer on January 6, counsel for TransPerfect stridently responded on January 13 that "indemnification is not available" as matter of law, that "any compulsion by the Delaware Court" to enforce an order to the contrary would be unconstitutional, and suggested that Williams & Connolly raise the fee issue in federal court rather than this court.[55]  Counsel for TransPerfect also accused Pincus of a "proven track record of overspending and wantonly wasting TransPerfect's money," ignoring the findings of this court and the Delaware Supreme Court to the contrary.[56] Having taken this tone, TransPerfect and its counsel have no one to blame but themselves that a meet-and-confer did not happen.

---

[52] *See In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at *22–51.

[53] TransPerfect's Mar. 17 Objs. at 21.

[54] *See* Dkt. 1746, Ex. B at 1.

[55] *See id.* at 3.

[56] *Id.*

Next, TransPerfect argues that Williams & Connolly's rates are off market, that its supporting attorneys' affidavit is deficient, that it charges higher rates than to other clients, and that awarding fees would be unreasonable because TransPerfect "did not hire" Williams & Connolly.[57] I have reviewed the fee affidavits and billing statements at issue along with TransPerfect's expert reports.[58] The fees are reasonable and Williams & Connolly's affidavit appears reliable. In its affidavit, Williams & Connolly states that the "hourly rates charged" in its invoices "are consistent with the hourly rates charged . . . to clients other than Mr. Pincus."[59] TransPerfect even concedes that Williams & Connolly's rates are lower than those Skadden charged in this case, which this court determined to be reasonable under the circumstances.[60] TransPerfect's challenges therefore fail.

---

[57] TransPerfect's Mar. 17 Objs. at 22–26.

[58] *See* Dkt. 1750, Ex. B; *see also* Dkt. 1730 (Aff. of Charles Davant), Exs. 1–2; Dkt. 1736, Ex. C (Studer Rep.), *id.*, Ex. D (Paige Rep.).

[59] Dkt. 1750, Ex. B ¶ 3.

[60] TransPerfect's Mar. 17 Objs. at 22–23; *In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at *24 ("In my opinion, a firm of Skadden's stature was necessary to support the Custodian under the circumstances of this case and the hourly rates Skadden charged are reasonable because they are consistent with the rates Skadden charges other clients, as the court's orders require, and are in line with the rates of firms that can fairly be considered Skadden's peers. Skadden's hourly rates also reflect the complexity of the work performed and the results obtained both during the sale process and after the closing."); *see also In re TransPerfect Glob., Inc.*, 278 A.3d at 656–658 (holding that the trial court did not abuse its discretion in finding Skadden's hourly rates to be reasonable based on a range evidence, including a sworn affidavit of a Skadden partner, data on peer firm billing, the complexity of the task counsel handled, and counsel's ability to "navigate[] significant obstacles" relating to this highly unusual case (internal quotation marks omitted)).

Separately, TransPerfect challenges Williams & Connolly's practice of redacting individual attorney names on its invoices, instead replacing them with "Partner," "Associate," and "Counsel."[61] TransPerfect argues that these designations are not sufficiently "distinct and definite" under paragraph 3(a) of the November 1, 2019 Order.[62] I disagree. This court has already found such designations adequate when evaluating Skadden's fees.[63]

TransPerfect also lambasts Williams & Connolly for excessive billing because Williams & Connolly's billing invoices state that it prepared for a "potential" motion to dismiss rather than an actual motion to dismiss.[64] This too fails. As stated earlier, Williams & Connolly filed a motion to dismiss in the Securities Action, so the reference to a "potential" motion in the billing invoice makes no difference.

Finally, TransPerfect also reserves some ire for Troutman Pepper, attacking it for the same reason TransPerfect criticizes Williams & Connolly.[65] I have reviewed Troutman Pepper's fee affidavit and it appears reasonable.[66] This objection fails.

For the foregoing reasons, TransPerfect's objections are overruled, except to the extent its objection to the January 2021 legal bills is not moot, which is sustained in part.

---

[61] TransPerfect's Mar. 17 Objs. at 26–28.

[62] *Id.* at 26 (citing Dkt. 1399 (Nov. 1, 2019 Order) ¶ 3(a)).

[63] *See In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at *23–24.

[64] TransPerfect's Mar. 17 Objs. at 28–29.

[65] Dkt. 1752 at 10–15.

[66] *See* Dkt. 1750, Ex. C.

Counsel for Pincus shall prepare a revised form of order consistent with this letter decision within ten days.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)