[No. D003506. Fourth Dist., Div. One. Dec. 3, 1986.]

CONSIDINE COMPANY, INC., et al.,
Cross-complainants and Appellants, v.
SHADLE, HUNT & HAGAR et al., Cross-defendants and Respondents.

COUNSEL

Higgs, Fletcher & Mack, Bruce D. Jaques, Jr., and Gregory Y. Lievers for Cross-complainants and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard, Alan E. Greenberg and Patricia E. Mundy for Cross-defendants and Respondents.

OPINION

**LEWIS, J.**—The Considine Company, Inc., and Considine Vineyard Company, cross-complainants and appellants (Considine), appeal from a sum-

mary judgment dismissing their cross-complaint against cross-defendants and respondents Shadle, Hunt & Hagar, Ernest L. Hunt, Jr., and James L. Hagar (SH&H). For the reasons set forth below we must reverse the judgment.

## FACTS

On August 1, 1979, Considine entered into a lease of restaurant space with George Moulios and his wife Concetta. The leased premises were located in Considine's Vineyard shopping center. The lease included the right to use patio space outside the restaurant for outdoor dining.

Moulios's proposed restaurant was located next to a Swensen's ice cream parlor operated by Judd Goldfeder. Goldfeder was also a lessee of Considine. Goldfeder objected to Moulios's plan for an outdoor dining area and brought suit against Considine and Moulios to enjoin Moulios's proposed construction on the patio. On August 28, 1979, Considine asked SH&H to defend both Considine and Moulios in the Goldfeder lawsuit.

Goldfeder's motion for preliminary injunction was heard by the Hon. Judge Charles Froehlich, Judge of the San Diego Superior Court. On October 1, 1979, Judge Froehlich issued a memorandum of intended decision. In his decision, Judge Froehlich suggested that the parties work out an agreement which would permit Moulios to operate an outside dining area, but in such a way as to suggest to the public that he was using a common area rather than reserving the patio space for the exclusive use of his patrons. Judge Froehlich stated that in the absence of an agreement, he would enjoin Moulios from making any structural changes in the patio or erecting any screens or barriers without prior court approval. To obtain such an injunction Goldfeder would have to post a $5,000 bond.

SH&H sent Considine a copy of the memorandum of intended decision and asked Considine to discuss it with Moulios. Later a Considine employee contacted SH&H and informed the law firm that she had spoken with Moulios about Judge Froehlich's decision. According to Considine's employee, Moulios felt that if he could not have the fully enclosed dining patio he had planned, he did not want any patio at all. Thereafter, SH&H took no further action on behalf of Considine or Moulios and on February 20, 1980, filed a substitution of attorneys.

On June 29, 1982, the current round of litigation began. On that date, Considine filed an unlawful detainer action against Moulios in which it alleged that his rent was overdue. On September 16, 1982, Moulios responded by filing a separate complaint against Considine. Moulios alleged

breach of contract, intentional misrepresentation and negligent misrepresentation. In particular, Moulios claimed that Considine never provided the patio dining area promised in the lease. The unlawful detainer and breach of contract actions were later consolidated.

Next, both Moulios and Considine turned to their prior counsel. On May 31, 1983, Moulios filed a separate malpractice action against SH&H. Moulios alleged the firm failed to properly advise Moulios about the status of the Goldfeder lawsuit after September 7, 1979.

On March 8, 1984, Considine filed a cross-complaint against SH&H, alleging that SH&H was responsible for all or part of any damages Considine owed Moulios. The cross-complaint was filed as part of the consolidated unlawful detainer-breach of contract lawsuit.

After the cross-complaint was amended, SH&H moved for summary judgment against Considine. Relying on the deposition testimony of Moulios, the law firm argued that the substance of Judge Froehlich's memorandum had been accurately communicated to Moulios. Because Moulios was not the victim of any affirmative misconduct by SH&H, the law firm argued Considine was not entitled to any indemnity.

In opposition to the motion, Considine filed the declarations of two of its employees and Moulios. In the declarations the employees and Moulios stated that SH&H never advised them that the injunction required Goldfeder to post a $5,000 bond or how long it would take to appeal any injunction entered.

According to Moulios, the bond was significant because Goldfeder had indicated a willingness to settle their dispute. Moulios apparently believed that the bond would have helped him in reaching such a settlement. Alternatively, had an injunction been entered and had he been advised as to the time involved in an appeal, Moulios claimed he would not have waited in hopes of resolving his differences with Goldfeder.

The trial court granted SH&H's motion and on June 21, 1985, entered a judgment dismissing the cross-complaint. Considine filed a timely appeal.

While Considine's appeal has been pending, it has resolved its differences with Moulios by paying him $77,000.

We must reverse because the circumstances alleged in the cross-complaint and declarations filed in opposition to the motion are sufficient to support a claim for indemnity.

## SH&H's Duty

Both here and in the trial court SH&H has misapprehended the scope of the allegations made against it. Although SH&H was able, by way of Moulios's deposition, to establish that it did not make any affirmative misrepresentations, an attorney's duty to his client goes further. ■ "'The general rule with respect to the liability of an attorney for failure to properly perform his duties to his client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. . . .'" (*Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, 308 [146 Cal.Rptr. 218, 578 P.2d 935]; *Enriquez* v. *Smyth* (1985) 173 Cal.App.3d 691, 696-697 [219 Cal.Rptr. 267].) The standard of care may be breached where the attorney fails to fully inform a client about his or her rights and the alternatives available under the circumstances. (*Enriquez* v. *Smyth, supra,* 173 Cal.App.3d 691, 697-698.)

In this case, SH&H states that it sent a copy of Judge Froehlich's memorandum to a Considine employee, asked her to discuss the memorandum with Moulios and call back if they wanted SH&H to take any further action. In opposing the motion for summary judgment, Considine submitted declarations which stated that SH&H did not inform Considine about what, according to Considine and Moulios, was a material portion of the memorandum—the $5,000 bond. The declarations also imply that SH&H did not discuss with Considine or Moulios alternative remedies, their cost and the likelihood of their success.

A trier of fact may at some point believe that, under the circumstances, SH&H's contact with Considine's employee was sufficient to discharge its duty to fully advise its clients. However, on this conflicting record we cannot say so as a matter of law. Since there are issues of material fact, the summary judgment should not have been granted unless SH&H is immune from claims of indemnity as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

## EQUITABLE INDEMNITY AMONG TORTFEASORS

### *Commercial Standard*

SH&H relies extensively on *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393]. Its reliance is misplaced. In *Commercial Standard* the plaintiff was an engineering firm which sued two title companies for fraud and negligence in preparation of a "lot

book" guaranty. The plaintiff had ordered the guaranty from the defendants, and, on its lawyer's advice, relied upon the guaranty in entering into a property exchange. Unfortunately, the guaranty failed to disclose a $750,000 deed of trust on the property the plaintiff received in the exchange.

The title companies brought a cross-complaint against the plaintiff's lawyer, alleging that in advising his client to rely on a guaranty the lawyer was partially responsible for the plaintiff's loss. The title companies argued that their cross-complaint was proper under the holding in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*). This court, in an opinion by Justice Staniforth, refused to extend *AMA* to the facts alleged by the title company. The court held that equitable indemnity was not proper because the lawyer and the title companies were not joint tortfeasors within the meaning of *AMA*. (*Commercial Standard, supra,* 92 Cal.App.3d at pp. 941-944.) As the court noted, any claims by the plaintiff against the lawyer would hinge upon the success of the plaintiff's claims against the title companies. (*Id.* at p. 942.) Until the plaintiff showed that it could not recover from the title companies, as warranted by the lawyer, the plaintiff would have no claim against the lawyer. (*Ibid.*) Thus, the lawyer and the title companies did not share liability for the whole of an individual injury—in fact, their liability was mutually exclusive.

The *Commercial Standard* court also took note of the fact that the lawyer was not the title companies' counsel. (92 Cal.App.3d 934, 943.) The lawyer's duty was owed exclusively to the engineering firm, the title companies' adversary. The title companies' conduct, over which the attorney had no control, was in the nature of an unforeseeable independent intervening force. (*Id.* at p. 944.)

Without either shared liability or concerted action, the *Commercial Standard* court was unwilling to imply any right of indemnity. In addition, as a matter of public policy, the court held it was inappropriate to permit defendants to sue their adversaries' attorneys. (92 Cal.App.3d 934, 944-946.)

SH&H believes that it is in the same position as the lawyer in *Commercial Standard*. SH&H argues that because Considine's liability to Moulios may include injuries which occurred both before and after the firm was retained, SH&H and Considine do not share liability for the whole of an indivisible injury. Further, SH&H argues that with respect to such injuries, it was not acting in concert with Considine, it shared no duty with Considine and it could not foresee Considine's conduct. Because it does not believe that it fits snugly within the categories prescribed in *Commercial Standard,* SH&H argues that Considine is not entitled to any indemnity.

We reject SH&H's narrow interpretation of *Commercial Standard*. Most notably, in *Standard Pacific of San Diego* v. *A. A. Baxter Corp.* (1986) 176 Cal.App.3d 577 [222 Cal.Rptr. 106], this court, again by Justice Staniforth, rejected the argument that the term "joint tortfeasors" as used in Code of Civil Procedure section 877.6[1] was limited to those who act in concert to cause an injury. In doing so, he relied upon *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280 [188 Cal.Rptr. 580]. In *Turcon*, Division Two of the Second District Court of Appeal noted the historical meaning of "joint tortfeasor" had been expanded to include joint, concurrent and successive tortfeasors and concluded that the Legislature intended the broader concept when it enacted section 877.6. The *Standard Pacific* and *Turcon* opinions support the view that, contrary to SH&H's argument, equitable indemnity is not restricted to the alternatives discussed in *Commercial Standard*.

By the same token, the availability of equitable indemnity is not unlimited. As the *Turcon* court pointed out: "[I]f there were in fact two separate and distinct torts committed, one by the appellant and one by the respondents, appellant would never, under any theory, be entitled to indemnity damages attributable to its tortious conduct." (*Turcon Construction, Inc.* v. *Norton-Villiers, Ltd., supra,* 139 Cal.App.3d at p. 284.) Moreover, in *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400], the court held that an attorney whose negligence bars his client's claims against a third party cannot seek equitable indemnity from the third party. In rejecting such an expansion of *AMA*, the *Munoz* court said: "[The attorney's] argument fails to consider the key ingredient in equitable indemnity: equity. Where that element is missing, the complaint fails to state a cause of action and the question of how to apportion liability never arises." (*Id.* at p. 428.) Thus, in determining whether Considine may state a valid claim against SH&H, our primary concern must be whether it is equitable to require the law firm to bear a portion of Considine's losses. We believe that it is.

Under the terms of the lease, Considine was obligated to provide Moulios with a patio. In order to discharge that obligation, Considine retained SH&H to represent itself, as well as Moulios. Under these circumstances SH&H's duties were not exclusive. They ran to Considine as well as to Moulios. Moreover, while Considine would not be vicariously liable for SH&H's negligence (see *Lynn* v. *Superior Court* (1986) 180 Cal.App.3d 346, 348-349 [225 Cal.Rptr. 427]; *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858 [110 Cal.Rptr. 511]), its errors could nonetheless increase Considine's

---

[1]Code of Civil Procedure section 877.6 was a codification of the equitable principles set forth in *AMA, supra,* 20 Cal.3d 578. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 498-499 [213 Cal.Rptr. 256, 698 P.2d 159].)

liability to Moulios under the lease. We believe these facts make it equitable for Considine to seek indemnity from its lawyers: unlike *Commercial Standard* and *Munoz,* here there was a duty running from indemnitor to indemnitee and readily foreseeable damage in the event the duty was breached.

Contrary to SH&H's argument, when the *Commercial Standard* court spoke of "entire damage proximately resulting," it did not mean to bar equitable indemnity in every instance where one defendant may be liable for less damage than another. Rather, we believe, even where one of two tortfeasors may be solely responsible for part of a plaintiff's damages, the conduct or relationship of the tortfeasors may still permit them to share the burden of those damages for which responsibility is shared. Thus, Considine's conduct prior to retaining the law firm and after SH&H filed a substitution of attorneys does not alter Considine's ability to seek indemnity. SH&H may not be liable for events which occurred outside the temporal limits of its relationship with Considine. During the course of the relationship, however, Considine's conduct was not, as a matter of law, an unforeseeable, independent intervening force.

Because SH&H was Considine's counsel, as well as Moulios's, the public policy considerations which barred an indemnity action in *Commercial Standard* and *Held* v. *Arant* (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422], have no application. Here, the attorneys voluntarily assumed obligations to two clients with interests which later became adverse. To the extent SH&H faced conflicting obligations, SH&H was solely responsible for the conflict. This is not an instance, as in *Commercial Standard* and *Held* v. *Arant,* where an attorney's ability to discharge his obligations to his client might be impaired if he is exposed to liability to persons who are not his clients.

*Misrepresentation*

■ If, on remand, SH&H is able to show that Considine intentionally deceived Moulios at the time the lease was signed, we do not believe Considine would be entitled to equitable indemnity. (See *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 811 [119 Cal.Rptr. 858, 532 P.2d 1226]; *Southern Pac. Transportation Co.* v. *State of California* (1981) 115 Cal.App.3d 116, 121 [171 Cal.Rptr. 187].) However, SH&H also argues that equitable indemnification under *AMA* does not apply to claims for negligent misrepresentation. The law firm relies upon *Carroll* v. *Gava* (1982) 98 Cal.App.3d 892 [159 Cal.Rptr. 778], and *Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154, 176 [180 Cal.Rptr. 95]. As the court in *Kohn* v. *Superior Court* (1983) 142 Cal.App.3d 323 [191 Cal.Rptr. 78], pointed out: "At most, *Carroll* stands for the proposition that as long as the plaintiff is not aware of the

true state of facts his negligence in not ascertaining them will not be compared with the negligence of the defendant in making the misrepresentation. Its holding does not imply that relative fault will not be assessed between or among defendants jointly charged with misrepresenting to the plaintiff. Only its dicta could be interpreted so broadly.

"*Godfrey* v. *Steinpress, supra,* . . . merely reiterated the *Carroll* holding and adopted some of its sweeping generalizations: . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"The *Godfrey* court did not suggest a sound reason for ruling out comparative indemnity among joint tortfeasors in a commercial misrepresentation action." (*Id.* at pp. 331-332.)

We agree with this interpretation of *Carroll* and *Godfrey.* Those cases do not suggest the principles enunciated in *AMA* are inapplicable to defendants charged with negligent misrepresentation. Moreover, nothing in *AMA* or Code of Civil Procedure section 877.6 limits the doctrine of comparative negligence to noncommercial lawsuits. If a commercial action requires determination of the "negligence" or "fault" of various defendants, their rights are governed by the principles set forth in *AMA.* (See *Kohn* v. *Superior Court, supra,* 142 Cal.App.3d at p. 332.)

Having determined that SH&H is subject to indemnity claims under *AMA,* we need not consider whether Considine's contractual relationship with SH&H also gives rise to indemnity for the negligence alleged by Moulios. Under *AMA,* Considine may attempt to shift either all or part of the tort liability to SH&H. (*E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 375 [187 Cal.Rptr. 879].)

### BREACH OF CONTRACT

It is possible that a trier of fact will determine that Considine was not guilty of any negligence but that it nonetheless breached its contract with Moulios. Thus, we must determine whether Considine may recover from SH&H amounts paid to Moulios for such a breach.

■ A defendant sued for breach of contract may have a right of implied indemnity against a third person whose wrong caused the defendant's breach. (*County of Los Angeles* v. *Superior Court* (1984) 155 Cal.App.3d 798 [202 Cal.Rptr. 444]; *Nomellini Construction Co.* v. *Harris* (1969) 272 Cal.App.2d

352 [77 Cal.Rptr. 361].) This implied right of indemnity, however, is distinct from the equitable indemnity among tortfeasors which was the subject of *AMA*. For instance, a third party's prior settlement with the victim of a breach of contract will not afford it any protection under Code of Civil Procedure section 877.6. (*County of Los Angeles, supra,* 155 Cal.App.3d at p. 803.) The question we must resolve is whether and under what circumstances an implied indemnitee is able to shift less than its entire loss on a contract claim to an implied indemnitor.

In our view, resolution of this question depends upon the circumstances which give rise to the implied right of indemnity. As the Supreme Court explained in *E. L. White* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 507 [146 Cal.Rptr. 614, 579 P.2d 505], implied indemnity "may find its source in equitable considerations brought into play either by contractual language not specifically dealing with indemnification or by the equities of the particular case." Our analysis in this area is also guided by the following statement from the Supreme Court's opinion in *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 769 [206 Cal.Rptr. 354, 686 P.2d 1158]: "When we move from such special relationships to consideration of the tort remedy in the context of the ordinary commercial contract, we move into largely uncharted and potentially dangerous waters. Here, parties of roughly equal bargaining power are free to shape the contours of their agreement and to include provisions for attorney fees and liquidated damages in the event of breach. . . . In such contracts, . . . there is the risk that interjecting tort remedies will intrude upon the expectations of the parties. This is not to say that tort remedies have no place in such a commercial context, but that it is wise to proceed with caution in determining their scope and application." Although the caution suggested by the court in *Seaman's* was prompted by a litigant's attempt to expand the remedies available for breach of the implied covenant of good faith and fair dealing, it serves to remind us that doctrines developed to protect the victims of torts have not obliterated entirely the reasonable expectations of the parties to contracts.

■ In light of the deference we must afford the reasonable expectations of contracting parties, we believe that where the alleged breach of an express promise gives rise to a claim for implied indemnity, principles of contract law should control. Thus, where one party has promised to perform a particular act, upon breach the injured promisee should not face a comparative negligence defense. (See *Bear Creek Planning Com.* v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227, 1239 [211 Cal.Rptr. 172].) Rather, the only limitation on indemnity should be the traditional contract rule which completely bars indemnity to those whose active participation in the injury has gone beyond simple negligence. (*Id.* at p. 1241.) Thus, in cases such

as *Nomellini* and *Bear Creek,* where the indemnitor was charged with breach of an express promise, indemnity could be barred, but only upon a showing of participation beyond the mere failure to perform the duty imposed by law. (164 Cal.App.3d 1241; *Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 381 [25 Cal.Rptr. 301].)

However, when indemnity is based, not upon breach of a promise, but upon breach of a duty of care, the principles of comparative fault set forth in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, must be considered. When indemnity is founded upon the absence of due care, it is not unexpected or unfair to consider the degree to which the indemnitee's own lack of care contributed to a particular loss. Like the court in *Kohn* v. *Superior Court, supra,* 142 Cal.App.3d at page 332, we believe that where the indemnitor's liability rests upon a determination of fault, his or her rights should be subject to the principles of equitable apportionment set forth in *Li.*[2]

Considine's claim for indemnity is based upon SH&H's alleged breach of its duty of care. Under our analysis, Considine should be able to recover from SH&H the law firm's proportionate share of Considine's contract loss.

CONCLUSION

Because, based upon the pleadings and declarations, Considine may pursue its claim for indemnity, we reverse the judgment dismissing its cross-complaint.

Kremer, P. J., and Riggs, J.,* concurred.

---

[2]It is important to recognize that our analysis may be useful only in those instances, such as *County of Los Angeles, supra,* 155 Cal.App.3d 798, where an indemnitee's liability to a third party is strictly contractual. Where the third party is the victim of a tort, the public policy in favor of compensating tort victims (see *AMA, supra,* 20 Cal.3d at p. 590) might require a different analytical framework. Unlike the court in *Bear Creek,* we do not reach that question.

*Assigned by the Chairperson of the Judicial Council.