Filed 5/16/13  Anderson Private Investors v. Colak CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KAYNE ANDERSON PRIVATE INVESTORS et al., | B239111 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC462778) |
| v. | |
| MUSTAFA COLAK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joanne B. O'Donnell, Judge.  Affirmed.

Valle Makoff, Jeffrey T. Makoff, Brandon M. Carr; Nagler & Associates, Lawrence Nagler and Charles Avrith for Plaintiffs and Appellants.

Lurie, Zepeda, Schmalz & Hogan, Andrew W. Zepeda and Shawn M. Ogle for Defendant and Respondent.

* * * * * *

Plaintiffs and appellants Kayne Anderson Private Investors, L.P., Kayne Anderson Private Investors II, L.P. and Kayne Anderson Private Advisors, L.P. appeal from a judgment entered following the trial court's order sustaining a demurrer without leave to amend filed by defendant and respondent Mustafa Colak (Colak). Appellants sought equitable indemnity, recovery of attorney fees and declaratory relief, alleging that Colak should bear proportionate responsibility for a multi-million dollar arbitration award entered against them. After the demurrer was sustained, the trial court also denied appellants' motion for leave to amend to allege a breach of contract claim against Colak.

We affirm. The trial court properly sustained the demurrer without leave to amend. Appellants failed to state a cause of action for equitable indemnity because they were not mutually liable with Colak for the same injury. They likewise failed to state a claim for tort of another because they incurred attorney fees defending allegations of their own fraud. Finally, their declaratory relief action failed because it was merely derivative of their other claims. The trial court properly exercised its discretion in denying appellants' motion for leave to amend and in construing the motion as an unsupported motion for reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Arbitration.

In 1994, Siamak ("Mack") Katal (Katal) and his wife Ingrid Katal founded Detection Logic, Inc. (Detection Logic), a life safety and security contracting company. Appellants are private equity fund groups that had invested over $35 million in Detection Logic between 2005 and 2008. Colak was Detection Logic's president and chief executive officer in 2007 and 2008.

In 2008, after an accounting firm had conducted an internal audit and issued an opinion that Detection Logic's 2007 financial statements were materially correct and complied with generally accepted accounting principles (GAAP), appellants and Katal initiated efforts to sell the company. Integrated Products and Services, Inc. (IPS) submitted a $150 million bid in October 2008. Because appellants and Katal required

2

that the sale close by the end of 2008, Detection Logic's September 2008 financial statements (September financials) formed the basis for the $140 million purchase price. The parties executed the securities purchase agreement (SPA) for the sale of the company on December 12, 2008.

IPS retained Colak as Detection Logic's president. In connection with the company's sale, Colak executed a contingent payment agreement (Reimbursement Agreement) which entitled him to receive a pro forma percentage—specified as 1.4173 percent in a separate agreement—of the amounts actually received by appellants and Katal under the SPA and correspondingly obligated him to pay back to Detection Logic the same pro forma percentage of any amount that appellants and Katal were required to pay IPS as a result of financial adjustments under the SPA.[1]

Following the sale, IPS discovered that the September financials were not materially correct, did not comply with GAAP and overstated Detection Logic's earnings. In accordance with the terms of the SPA, in September 2009 IPS filed a demand for arbitration, seeking damages for breach of warranty and fraud. In August 2010, IPS filed an amended complaint in the arbitration that alleged claims for breach of contract, fraud and unfair competition. Appellants and Katal asserted counterclaims.

The arbitration was conducted in October 2010. In a July 2011 award, the arbitrator determined that Detection Logic misrepresented its financial position and thereby breached the SPA and engaged in an unfair business practice. He expressly found that Katal lacked credibility and that Colak was credible, despite appellants' and Katal's efforts to discredit his testimony. The arbitrator further determined that appellants did not engage in fraud, finding that they offered evidence they "reasonably relied on the Company's senior management and accounting department with respect to the September Financials" and there was no evidence they participated in creating or knew of the manipulated financial statements. Nonetheless, it found they were liable for

---

[1]    The Reimbursement Agreement gave Detection Logic the right to offset the payments owing by the pro forma percentage or, in the event it elected not to offset, to assign the right to receive such payment to appellants and Katal.

Detection Logic's breach pursuant to section 10.1(a)(i) of the SPA, which provided that each seller, including appellants, "shall be jointly and severally liable for 'any breach of any warranty or the inaccuracy of any representation of the Company contained in this Agreement.'" On the basis of its establishing multiple breaches of the SPA, the arbitrator awarded IPS over $33 million, payable by appellants and Katal jointly and severally.

### *Complaint and Demurrer.*

In June 2011, appellants filed their original complaint against Colak and others, alleging causes of action for comparative equitable indemnity, contribution, tort of another and declaratory relief. Colak demurred, and appellants filed a first amended complaint before the matter was heard. Alleging the same four causes of action, the operative complaint sought equitable indemnity and reimbursement of attorney fees from Colak to the extent that appellants' liability to IPS in connection with the sale of Detection Logic was caused by Colak's conduct.[2] They alleged that Colak knowingly participated in the fraud and misconduct committed by Katal. They specifically alleged that "Colak's alleged fraud is detailed in the sworn testimony he gave in the JAMS Arbitration and includes testimony and documents that he alleges shows he personally manipulated financial data, provided information he knew was incorrect to Detection Logic's financial personnel charged with making disclosures to IPS and signed the SPA (which included financial misrepresentations and warranties)."

Colak again demurred, asserting that appellants failed to allege facts sufficient to state a cause of action. More specifically, he argued that equitable indemnity was unavailable because he and appellants were not joint tortfeasors, the "tort of another" doctrine did not apply where appellants defended themselves against allegations involving their own tortious conduct and declaratory relief was duplicative of their other claims. In support of his demurrer, he sought judicial notice of the arbitration award, the second amended complaint in the arbitration and the SPA.

---

[2]     Appellants' second cause of action for contribution was not alleged against Colak.

4

Appellants opposed the demurrer. At the conclusion of their opposition, they requested leave to amend and further indicated they intended to add claims to their complaint seeking Colak's payment under the Reimbursement Agreement. They attached exhibits showing that they had previously demanded payment of Colak's pro forma percentage under the Reimbursement Agreement, calculated as approximately $340,000.

At the conclusion of a December 5, 2011 hearing, the trial court sustained the demurrer without leave to amend for the reasons outlined in its tentative ruling. It determined that because appellants had been held liable only under the SPA, no indemnity claim arose because they were not joint tortfeasors with Colak. The trial court further determined that attorney fees under the "tort of another" theory could not be recovered by exonerated parties who incurred fees in defending themselves from a codefendant found liable. Finally, it found that appellants' declaratory relief claim was insufficient, as it was wholly derivative of the other claims.

***Motion for Leave to Amend.***

Though they did not submit it to the trial court at the time of the hearing, appellants filed a motion for leave to file a second amended complaint on the same day. They sought to add a cause of action for breach of contract and sought recovery of Colak's pro forma percentage under the Reimbursement Agreement. Colak opposed the motion, characterizing it as an unsupported motion for reconsideration and arguing that the only reason appellants had not included the breach of contract claim in their original pleading was because it would have undermined their indemnity claim. In reply, appellants argued that the contract and indemnity claims were unrelated, and the only reason they delayed in asserting breach of contract was to allow time for Colak to comply with their demand for performance.

Following a January 11, 2012 hearing, the trial court denied the motion. It agreed with Colak that the breach of contract claim could and should have been alleged originally, issuing a minute order which provided in part: "[P]laintiffs chose in both the original complaint and the first amended complaint not to allege breach of contract

5

against Colak, choosing instead to put all their eggs in the one basket of their equitable indemnity theory of recovery.  This is not, therefore, a case where plaintiffs only recently discovered their breach of contract claim against Colak; they have known of it from the beginning and elected, for strategic reasons, not to allege it.  When the court sustained Colak's demurrer to the first amended complaint without leave to amend, plaintiffs' strategy failed."  Also because of the order sustaining the demurrer without leave to amend, the trial court concluded that appellant's motion was one for reconsideration, made without new or different facts, law or circumstances.

The trial court entered a judgment of dismissal in favor of Colak.  Appellants timely appealed.  Thereafter, the trial court denied Colak's motion for sanctions.[3]

## DISCUSSION

Appellants maintain that the trial court erred in sustaining the demurrer without leave to amend and abused its discretion in denying their motion for leave to amend.  We find no merit to their contentions.

## I.  The Trial Court Properly Sustained the Demurrer Without Leave to Amend.

### A.  *Standard of Review.*

We review de novo a trial court's sustaining of a demurrer, exercising our independent judgment as to whether the complaint alleges sufficient facts to state a cause of action.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  We assume the truth of properly pleaded allegations in the complaint and give the complaint a reasonable interpretation, reading it as a whole and with all its parts in their context.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)  "We do not, however, assume the truth of the legal contentions, deductions or conclusions; questions of law,

---

[3]     After briefing, Colak moved to strike untimely arguments raised in appellants' reply brief.  Though we deny the motion, we need not consider arguments raised for the first time in a reply brief.  (*Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387–1388; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

such as the interpretation of a statute, are reviewed de novo." (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 373; accord, *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We may also disregard allegations which are contrary to law or to a fact of which judicial notice may be taken. (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 559–560.)

We apply the abuse of discretion standard in reviewing a trial court's denial of leave to amend. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) Although leave to amend should be liberally granted, the trial court has discretion to sustain a demurrer without leave to amend where there is no reasonable probability that its defects could be cured by amendment. (*Ibid.*; *Green v. Travelers Indemnity Co.* (1986) 185 Cal.App.3d 544, 556.) It is appellants' burden to show either that the trial court erred in sustaining the demurrer or abused its discretion in denying leave to amend. (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1038.)

## B. Equitable Indemnity.

In their first cause of action, appellants alleged they were entitled to "comparative equitable indemnity" in an amount believed to exceed $39 million.[4] In support of their claim, they alleged on information and belief that the claims on which IPS prevailed "were based upon allegations/admissions of fraudulent conduct by defendant Colak, to the effect that he knowingly participated in the fraudulent preparation of Detection Logic's Financial Documents, including the September Financials, which IPS relied upon to purchase Detection Logic." They added that "Colak's admissions, if true, render him liable as a joint tortfeasor along with the other defendants . . . ." On this basis, they alleged: "The IPS claims and any liability of plaintiffs were caused by acts and omissions of defendants Colak . . . (including particular acts and omissions arising out of and in connection with defendants' obligations under the SPA and by law). To the extent

---

[4]    This figure took into account an approximate $6.4 million accounting arbitration award entered against appellants in August 2010.

plaintiffs' liability to IPS in connection with the sale of Detection Logic was caused by the acts of Colak . . . , those defendants are responsible for any damages."

"Equitable indemnity is an equitable doctrine that apportions responsibility among tortfeasors responsible for the same indivisible injury on a comparative fault basis. [Citation.] '[T]he equitable indemnity doctrine originated in the common sense proposition that when two individuals are responsible for a loss, but one of the two is more culpable than the other, it is only fair that the more culpable party should bear a greater share of the loss.' [Citation.] A right of equitable indemnity can arise only if the prospective indemnitor and indemnitee are mutually liable to another person for the same injury. [Citation.]" (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1176–1177; accord, *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852 [the doctrine of equitable indemnity "applies only among defendants who are jointly and severally liable to the plaintiff"]; *Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1786 ["California common law recognizes a right of partial indemnity under which liability among multiple tortfeasors may be apportioned according to the comparative negligence of each"].)

Emphasizing one of the key elements necessary for equitable indemnity, the court in *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1040 (*Stop Loss*) stated: "It is well-settled in California that equitable indemnity is only available among *tortfeasors* who are jointly and severally liable for the plaintiff's injury." Amplifying that principle, the court explained that "California law does not permit equitable apportionment of damages for breach of contract" and declined to follow a New Mexico decision which adopted a contrary rule. (*Id.* at p. 1041, fn. 2.) While the concurring opinion in *Stop Loss* advocated for the application of indemnity principles on the ground that the indemnitor's conduct could also be construed as a breach of duty, it acknowledged the inherent difficulties in applying equitable indemnity principles among parties liable in tort and for breach of contract because of the different measure of damages flowing from each form of liability. (*Id*. at p. 1054 (Pollak, J., concurring).) In view of those complications, the concurrence conceded that any change

8

in the law should come from the Legislature or the Supreme Court and, absent such change, "we must adhere to the rule that equitable indemnity may be obtained only from one who is jointly and severally liable to the injured party based on the commission of a tort, i.e., based on the breach of a duty imposed by law." (*Id*. at p. 1055 (Pollak, J., concurring).)

*Stop Loss* affirmed an order sustaining a demurrer without leave to amend where the proposed indemnitor was liable, at most, for breach of contract. (*Stop Loss, supra,* 143 Cal.App.4th at pp. 1042–1043.) Thereafter, the court in *In re Medical Capital Securities Litigation* (C.D. Cal. 2012) 842 F.Supp.2d 1208, 1213, relied on *Stop Loss* to affirm the dismissal of a complaint where the proposed indemnitee sought equitable indemnification for a breach of contract. According to the court, "California state law, as set forth by intermediate appellate courts, is clear. Equitable indemnity is only available between joint tortfeasors. *Stop Loss Insurance Brokers, Inc. v. Brown & Toland Medical Group* is exactly on point. . . . The Banks attempt to distinguish this case because the contractual defendant in *Stop Loss* was the third-party defendant, not the third-party plaintiff, as is the case here. This distinction does not control. As the *Stop Loss* court made clear, both the party seeking indemnification and the party from which it seeks indemnification must be tortfeasors. [Citation.]" (*In re Medical Capital Securities Litigation, supra*, at p. 1213; see also *Travelers Casualty and Surety Co. of America v. Desert Gold Ventures, LLC* (C.D. Cal. 2010) 2010 WL 5017798 at *15 [holding, as a matter of law, defendants could not seek equitable indemnity from cross-defendants because the claim against defendants was one for breach of contract and "whatever losses [defendants] incur as a result of their breach of the [contract] are theirs alone, not subject to apportionment"].)

Here, appellants' liability was based on breach of contract. In its order sustaining Colak's demurrer without leave to amend, the trial court took judicial notice of the arbitration award. In that award, the arbitrator expressly determined that appellants did not engage in fraud with respect to the preparation of the September financials, nor did they fraudulently induce IPS to enter into the SPA. Instead, they were contractually

9

liable for Detection Logic's breach of the SPA: "Section 10.1(a)(i) of the SPA provides that each Seller, which includes each of the Respondent Sellers herein, shall be jointly and severally liable for 'any breach of any warranty or the inaccuracy of any representation of the Company contained in this Agreement.'" As the trial court explained, "the arbitrator found plaintiffs liable for breaching a contract term in the sales agreement in which the defendants affirmed that financial representations in the agreement were correct when in fact they were not and so plaintiffs became liable for the damage that was caused by the breach." According to *Stop Loss* and its progeny, appellants cannot seek equitable indemnification from Colak because their liability was premised on their breach of contract, and the parties therefore were not joint tortfeasors responsible for a single injury.[5]

We are unpersuaded that the authorities on which appellants rely require a different result. The discussion in *Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151 does not support appellants' suggestion that the case eliminated the joint tortfeasor element of equitable indemnity. There, in order "to provide context to [the plaintiff's] claim of a right to implied contractual indemnity," (*id*. at p. 1158) the court described the three historical forms of indemnity: "(1) indemnity expressly provided for by contract (express indemnity); (2) indemnity implied from a contract not specifically mentioning

---

[5] The arbitrator also found that Detection Logic's breach of the SPA was sufficient to support a claim for unfair business practices under Business and Professions Code section 17200, and determined that IPS's damage were recoverable as restitution under this theory as well. The trial court ruled that the arbitrator's finding appellants liable under this quasi-contract theory could not be the basis for an equitable indemnity claim because it did not render them joint tortfeasors with Colak. In their opening brief, appellants did not address the trial court's unfair competition ruling and we therefore deem any challenge to that ruling waived. (E.g., *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 ["Courts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge"]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466 [issues not properly raised in appellant's brief are deemed forfeited or abandoned].)

indemnity (implied contractual indemnity); and (3) indemnity arising from the equities of particular circumstances (traditional equitable indemnity). [Citation.]" (*Id.* at p. 1157, fn. omitted.) It explained that while "not extinguished, implied contractual indemnity is now viewed simply as 'a form of equitable indemnity.'" (*Id*. at p. 1157.) Nonetheless, the court acknowledged that both types of indemnity retained distinct characteristics, as "'traditional equitable indemnity' . . . [was] not based on the existence of a contractual relationship between the indemnitor and the indemnitee," while implied contractual indemnity continued to require that the indemnitor and indemnitee be in a contractual relationship with one another. (*Id.* at pp. 1157, fn. 2 & 1159.) In the context of resolving whether the plaintiff's claim for implied contractual indemnity could be subject to statutory immunities, the *Prince* court reaffirmed the principle that traditional equitable indemnity is available only between joint tortfeasors. (*Id*. at p. 1160 ["traditional equitable indemnity differs significantly from express contractual indemnity, in that the former is not available in the absence of a joint legal obligation to the injured party"].)

The other two cases on which appellants principally rely, *Considine Co. v. Shadle, Hunt & Hager* (1986) 187 Cal.App.3d 760 (*Considine*) and *Card Constr. Co. v. Ledbetter* (1971) 16 Cal.App.3d 472 (*Card*), likewise addressed indemnity between parties in a contractual relationship. In *Considine*, a tenant sued his landlord for breach of contract and misrepresentation, and the landlord sought indemnity from counsel who had previously represented the landlord and tenant jointly. (*Considine, supra,* at pp. 763–764.) Addressing whether the landlord could seek indemnity in the event he was found liable only for breach of contract, the court distinguished between implied contractual indemnity and traditional equitable indemnity. It explained: "A defendant sued for breach of contract may have a right of implied indemnity against a third person whose wrong caused the defendant's breach. [Citations.] This implied right of indemnity, however, is distinct from the equitable indemnity among tortfeasors which was the

11

subject of *AMA*." (*Id*. at pp. 769–770.)**6** Confirming that its reference to "implied indemnity" did not involve traditional equitable indemnity, the court cited *County of Los Angeles v. Superior Court* (1984) 155 Cal.App.3d 798, 803, disapproved by *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1032, fn. 12, and *Nomellini Construction Co. v. Harris* (1969) 272 Cal.App.2d 352, 359, both of which involved issues related to implied contractual indemnity. (*Considine, supra,* at pp. 769–770.) The balance of the discussion concerned the application of implied contractual indemnity principles to a breach of contract and the application of traditional equitable indemnity to an alleged breach of the duty of care. (*Id*. at pp. 770–771.) Contrary to appellants' position, *Considine* did not apply traditional equitable indemnity to a breach of contract.

Similarly, *Card, supra*, 16 Cal.App.3d 472 involved a series of subcontractors in contractual relationships. The lowest level subcontractors submitted false invoices, causing mid-level subcontractor Card to pay a lower level subcontractor, who in turn never paid the lowest level subcontractors. (*Id*. at p. 475.) They successfully sued the general contractor and were paid by its bonding company. Pursuant to a bonding indemnity agreement, Card was required to satisfy the bonding company's judgment. (*Id*. at p. 476.) Card then sought indemnity from the lowest level subcontractors on the ground that their conduct had forced it to pay twice—first when it paid the lower level subcontractor and again when it satisfied the judgment. (*Id*. at pp. 476–477.) Reversing an order sustaining a demurrer without leave to amend, the *Card* court characterized the claim as one for "implied indemnity," explaining that because Card's responsibility to pay was contractual and the subcontractor's alleged responsibility was based on tortious misrepresentations, "we think appellant Card stated a cause of action against respondents in implied indemnity. [Citations.]" (*Id*. at p. 478.)

"The right to implied indemnity may arise from contract or from equitable considerations. [Citations.]" (*Standard Oil Co. v. Oil, Chemical etc. Internat. Union*

---

**6** The court's reference to "*AMA*" is an abbreviation for *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, a case which first applied comparative fault principles to equitable indemnity.

12

(1972) 23 Cal.App.3d 585, 588.) The *Card* court emphasized that the indemnity claim involved two distinct forms of liability—breach of contract and tortious misrepresentation. (*Card, supra*, 16 Cal.App.3d at p. 478.) Because there was no indication in *Card* that the court intended to dispense with joint tortfeasor requirement necessary for a claim of equitable indemnity, we conclude that the "implied indemnity" referenced in *Card* arose from contract. Accordingly, we do not construe the case to support appellants' argument that they stated a valid cause of action for equitable indemnity against Colak.

Finally, appellants' belated citation in their reply brief to *County of San Mateo v. Berney* (1988) 199 Cal.App.3d 1489 does not assist them. In that case, the court held that a public entity sued for inverse condemnation may bring a cross-complaint for equitable indemnity against "third parties whose negligent or fraudulent acts were causative factors in the damaging or taking of private property." (*Id*. at p. 1494.) But a cause of action for inverse condemnation is unlike one for breach of contract, as "when the government takes or damages property, it is strictly liable to pay compensation therefor, unless an exception to strict liability applies. [Citation.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 82.) Thus, the case was an application of the general principle "that equitable indemnity may also be used to apportion liability where '"one or more tortfeasors' liability rests on the principle of strict liability."' [Citations.]" (*Greystone Homes, Inc. v. Midtec, Inc*. (2008) 168 Cal.App.4th 1194, 1208–1209.)

### C.    Tort of Another.

In their third cause of action, appellants sought attorney fees and costs, alleging: "Due to the torts of the defendants, plaintiffs have been forced to protect their interests by defending litigation brought by IPS and by filing this action against defendants. To protect their interests, plaintiffs have incurred, and continue to incur, attorneys' fees, costs and statutory prejudgment interest owed to IPS." The trial court ruled that the doctrine did not apply here, where appellants incurred fees in defending themselves against allegations for which Detection Logic was found liable.

The "tort of another" doctrine is one of several equitable exceptions to the general rule that each party bears the cost of employing an attorney unless a statute or agreement provides otherwise. (See *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 (*Prentice*); *Heckert v. McDonald* (1989) 208 Cal.App.3d 832, 837.) The doctrine provides: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred. [Citations.]" (*Prentice, supra,* at p. 620.) In *Davis v. Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, our Supreme Court cautioned that "the *Prentice* exception was not meant to apply in every case in which one party's wrongdoing causes another to be involved in litigation with a third party. If applied so broadly, the judicial exception would eventually swallow the legislative rule that each party must pay for its own attorney. [Citations.]" (*Id.* at p. 7, fn. omitted; see also *David v. Hermann* (2005) 129 Cal.App.4th 672, 689 ["The courts have refrained from expanding the rule in a way that would undermine the general rule that a party bears his own attorney fees"].)

Accordingly, the tort of another doctrine has not been extended to enable a defendant to recover fees and expenses incurred in defending against allegations of his or her own wrongdoing. (*Davis v. Air Technical Industries, Inc., supra,* 22 Cal.3d at p. 6 ["Since Davis defended exclusively against allegations of his own negligence, he is not entitled to recover attorney's fees" under *Prentice* or any other doctrine]; accord, *Santa Clara Valley Water Dist. v. Olin Corp.* (2009) 655 F.Supp.2d 1048, 1063 ["Under *Davis* . . . , the 'tort of another' doctrine of damages recognized in *Prentice* does not extend to allow recovery of legal expenses by a defendant who was defending against allegations of its own negligence"].) Nor is it of any consequence that the party seeking fees ultimately prevails in the underlying litigation. As the court in *Watson v. Department of Transportation* (1998) 68 Cal.App.4th 885, 894, explained: "The extension of the *Prentice* rule to the commonplace case of an exonerated alleged tortfeasor would go a long way toward abrogation of the American rule that each party to a lawsuit must

14

ordinarily pay his or her own attorney's fees. It would substantially expand the notion of duty under the law of torts to compensation of the litigation expenses incurred by all persons, however connected to any tortious event, whom the injured plaintiff elects to sue who succeed in establishing lack of liability."

Here, the judicially-noticed second amended complaint filed in the arbitration established that IPS's allegations were directed against Katal and appellants collectively as the "sellers" of Detection Logic. The arbitration award confirmed that appellants defended against allegations of their own fraud and fraudulent inducement. The record fails to demonstrate the "'exceptional circumstances'" found to be present in *Manning v. Sifford* (1980) 111 Cal.App.3d 7, 12, a case relied on by appellants. There, buyers sued an adjacent property owner and their real estate brokers when the property owner, Sifford, blocked an easement that the brokers had represented permitted access. (*Id.* at p. 9.) After the trial court confirmed the existence of the easement, the brokers sought recovery of attorney fees from Sifford, and the appellate court reversed the denial of fees, reasoning: "In this instance, brokers' litigation expenses were incurred solely on behalf of the innocent prevailing parties who were the victims of Sifford's wrongful conduct. Brokers were innocent of any wrongdoing but were compelled to prove the [buyers'] case against Sifford to protect themselves from liability. Under such circumstances, it is only fair that Sifford be required to compensate the brokers for their reasonable litigation expenses, including attorney's fees." (*Id.* at p. 12.)

Though appellants now attempt to cast themselves in the role of the innocent brokers forced to help IPS prove its case against Katal, the arbitration award belies their position. (See *Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 399 [allegations constituting conclusions of law or contrary to matters subject to judicial notice not deemed true for purposes of demurrer]; *Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [same].) According to the arbitrator, IPS's evidence of fraud involved Katal's acts and omissions that were established, in part, by Colak's testimony. Unlike the brokers who helped prove the buyers' case, appellants instead "presented evidence designed to discredit Colak." The arbitrator found such evidence

15

unpersuasive, noting that "the evidence showed that Katal often used threats and intimidation with the Company's employees" and that Colak had reason to fear Katal would withhold a promised stock payment. Thus, appellants tried to protect themselves from liability by assailing Colak's credibility. To apply the tort of another doctrine under these circumstances would essentially turn the doctrine on its head. The trial court properly ruled that "[a] tort of another claim cannot be brought by an exonerated party against a codefendant who is found liable for the fees that the party incurred in defending itself."

### D.    Declaratory Relief.

In their fourth cause of action, appellants sought a declaration concerning the proportionate fault of all parties involved in the arbitration. The trial court sustained Colak's demurrer without leave to amend on the ground the claim was wholly derivative and duplicative of appellants' other claims.

"Generally, an action in declaratory relief will not lie to determine an issue which can be determined in the underlying tort action. 'The declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action. The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues.' [Citation.]" (*California Ins. Guarantee Assn. v. Superior Court* (1991) 231 Cal.App.3d 1617, 1623–1624.) Here, the language of appellants' declaratory relief cause of action shows that it was wholly derivative of the other causes of action and therefore the demurrer was properly sustained as to this claim. (See *Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794.) Specifically, appellants alleged they were entitled to comparative equitable indemnity and attorney fees and costs under the tort of another doctrine, and sought "a determination of defendant Colak's liability and proportionate fault with respect to the IPS claims." The declaration they sought was thus no different than what would have been determined in their underlying claims.

Contrary to appellants' assertion, *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794 supports the trial court's determination. There, the court held that the

16

plaintiff's declaratory relief cause of action was wholly derivative of its failed statutory claim where "[t]he only declaration sought by the cause of action is a judicial declaration that the arbitration provisions of the credit card agreement are illegal and unconscionable, and violate public policy," and the statutory cause of action "requests that the enforcement of the arbitration provisions of the credit card agreement be enjoined, because they are unlawful and/or unconscionable." (*Id*. at p. 800.) Here, similarly, appellants' cause of action for comparative equitable indemnity sought a judgment against Colak "in an amount proportionate" to his fault and their cause of action for tort of another sought to hold Colak responsible for their attorney fees and costs. The determination sought by appellant's declaratory relief claim was no different. Accordingly, the trial court properly sustained Colak's demurrer to the fourth cause of action.

**II.     The Trial Court Properly Exercised Its Discretion in Denying Leave to Amend.**

Appellants challenge the trial court's denial of leave to amend in two contexts. First, they argue that, at a minimum, the demurrer should have been sustained with leave to amend. Second, they argue that their separate motion for leave to file a second amended complaint should have been granted. We address each claim in turn.

*A.     Amendment to Complaint.*

In their opposition to the demurrer and at the hearing, appellants requested leave to amend. They bore the burden of showing that an amendment would cure the defects in their pleading. (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1497, fn. 19.) A plaintiff seeking to satisfy that burden ""'"must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden.' [Citation.] The plaintiff must clearly and specifically state 'the legal basis for amendment, i.e., the elements of the cause of action,' as well as the 'factual allegations

17

that sufficiently state all required elements of that cause of action.' [Citation.]" (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95.)

Beyond mentioning the proposed addition of facts relating to the Reimbursement Agreement, appellants have not articulated either any factual allegations or legal bases for leave to amend. On appeal, though appellants have renewed their request for leave to amend, they have similarly failed to show how an amendment would cure the multiple defects in their complaint. "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44.) The trial court properly exercised its discretion in denying leave to amend in connection with its order sustaining the demurrer.

### B. *Motion for Leave to Amend.*

On the same day that the trial court sustained Colak's demurrer without leave to amend, appellants filed a motion for leave to file a second amended complaint. For the first time, they alleged a breach of contract cause of action, seeking recovery from Colak under the Reimbursement Agreement. They alleged that the total amount due under the Reimbursement Agreement became final on October 24, 2011 after the parties reached a stipulation concerning costs, they immediately made a demand on Colak that he pay his pro forma percentage, and he rejected the demand on November 17, 2011.

In its order denying appellants' motion, the trial court described at length how the record established appellants were aware of their breach of contract claim at the time they filed their earlier pleadings, but for strategic reasons elected to omit it. The trial court further explained that because appellants had filed their motion after it had already sustained Colak's demurrer without leave to amend, the motion must be treated as one for reconsideration. So construed, the trial court found the motion had no merit: "Plaintiffs were plainly aware of their potential breach of contract against Colak when they filed their opposition to Colak's demurrer—they were aware of it when they filed their original and first amended complaints. Because plaintiffs had knowledge of the breach of

18

contract theory at the time they opposed the Colak demurrer, they have failed to offer new or different facts, circumstances or law that they could not with reasonable diligence have discovered and produced at the time of the hearing on Colak's demurrer and reconsideration under CCP Section 1008 is thus improper." The trial court concluded its order by declining to reconsider the order sustaining Colak's demurrer on its own motion, "because it wishes to discourage the kind of gamesmanship that plaintiffs have engaged in."

We review the denial of a motion for reconsideration for an abuse of discretion. (*California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 42; *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) "Where a demurrer has been sustained *without leave* to amend, it is proper to seek reconsideration based on a *proposed* amended complaint alleging different facts than the complaint to which the demurrer was sustained. The amended pleading itself constitutes a 'different state of facts' to permit reconsideration under CCP § 1008(a)." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 7:155.6, p. 7(1)-65 (rev. # 1, 2012), citing *Rains v. Superior Court* (1984) 150 Cal.App.3d 933, 944 (*Rains*).) Also relying on *Rains*, the court in *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386, seemed to suggest that the trial court abused its discretion in the event it denied such a motion: "Under *Rains v. Superior Court* (1984) 150 Cal.App.3d 933, 943–944, plaintiffs were entitled to submit proposed second amended complaints by way of a motion for reconsideration. If those second amended complaints stated any causes of action, then the trial court was obligated to (1) vacate its order which sustained the demurrers without leave to amend and (2) make a different order granting plaintiffs leave to file an amended complaint, which would include the causes of action which the trial court, in deciding the merits of the motion for reconsideration, determined were valid. [Citation.]"

In *Rains,* psychiatric patients brought several causes of action against psychiatrists in a residential treatment program. In connection with their claim for battery, the plaintiffs alleged that although they had consented to certain types of physical violence

19

for treatment purposes, the assaults were used to control their behavior under the guise of treatment. (*Rains, supra,* 150 Cal.App.3d at pp. 936–937.) On demurrer, the defendants argued that the plaintiffs' admission of consent barred their battery claim, and the trial court sustained the demurrer without leave to amend. (*Id*. at p. 937.) The plaintiffs moved for reconsideration and submitted a proposed complaint that contained additional allegations showing that the defendants had withheld information concerning the purpose of the assaults and batteries, and the appellate court concluded that the plaintiffs stated a valid claim. (*Id*. at p. 938.)

In connection with its determination that sanctions were not warranted for the plaintiffs' procedural use of a motion for reconsideration, the *Rains* court determined that the "different facts" alleged in the proposed pleading sufficed as the "new or different facts" required under Code of Civil Procedure 1008, subdivision (a). (*Rains, supra,* 150 Cal.App.3d at p. 944.) Finding that the plaintiffs satisfied the statutory requirements, the court held there was no basis for the imposition of sanctions; it did not, however, mandate that a motion for reconsideration must be granted in every instance where a proposed amended pleading sets forth different facts. (*Id*. at pp. 944–945.)

Importantly, more recent cases construing Code of Civil Procedure section 1008 have held that "[a] motion for reconsideration must be based on new or different facts, circumstances or law [citation], and facts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different.' [Citation.]" (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468; see *Hennigan v. White* (2011) 199 Cal.App.4th 395, 405–406 [motion for reconsideration of summary judgment properly denied where, at the time of the original ruling, the plaintiff was aware of the information in the new declarations she sought to offer]; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 688–690 [same].) Here, the record unambiguously shows that—at the latest—appellants were aware of all facts necessary to allege their breach of contract claim at the time of the hearing on the demurrer. Thus, their breach of contract allegations were insufficient to serve as new or different facts necessary for reconsideration.

We find it equally significant that the *Rains* court observed it was "not apparent that plaintiffs sought such reconsideration in bad faith or that the contentions there advanced were believed by them to be frivolous." (*Rains, supra*, 150 Cal.App.3d at p. 944.) Here, in contrast, the trial court expressly found that appellants had engaged in "gamesmanship" by deliberately omitting the breach of contract cause of action from their first two complaints and electing "to put all their eggs in the one basket of their equitable indemnity theory of recovery." As Colak pointed out in his opposition to the motion for leave to amend, appellants' strategy was obvious: They sought over $39 million in their comparative equitable indemnity claim as compared to the $340,000 dictated by the Reimbursement Agreement. But, their claim under the Reimbursement Agreement would potentially bar their comparative equitable indemnity claim. (See *Markley v. Beagle* (1967) 66 Cal.2d 951, 961 ["Since the parties expressly contracted with respect to the contractors' duty to indemnify the owners, the extent of that duty must be determined from the contract and not from the independent doctrine of equitable indemnity"].) The trial court therefore determined that appellants "elected, for strategic reasons, not to allege" their breach of contract claim, even though they were aware of it from the beginning.

The trial court properly exercised its discretion to conclude that appellants' tactics rendered them unable to offer a valid basis for failing to raise the breach of contract claim before the demurrer had been sustained without leave to amend. (See *Forrest v. Department of Corporations* (2007) 150 Cal.App.4th 183, 202 [a motion for reconsideration requires a strong showing of diligence] disapproved on another point in *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172, fn. 3; *Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342 [the party seeking reconsideration must offer a satisfactory explanation for the failure to produce the new or different facts at an earlier time].) Likewise, on appeal appellants have failed to offer a satisfactory explanation for failing to bring the breach of contract claim earlier, instead asserting that their motion should not have been characterized as one for reconsideration. We conclude they have failed to meet their burden to show an abuse of discretion.

## DISPOSITION

The judgment is affirmed. Colak is entitled to his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *
FERNS

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.